RICHARD STEELE, RESPONDENT, v. TOBIAS S.
BOLEY, AND ANOTHER, APPELLANTS.[1]

STATUTE OF LIMITATIONS.—PUBLIC LANDS.—FINAL ENTRY.—The
  statute of limitations begins to run against one who claims
  public lands as grantee of the United States in favor of one in
  possession, claiming to have acquired the title thus acquired by
  the patentee, from the date of the patentee's certificate of final
  proof and payment.

APPEAL from a judgment upon demurrer to an answer
in the district court of the first district and from the order
sustaining the demurrer. The opinion states the facts.

*Mr. Samuel R. Thurman* and *Mr. George Sutherland*
for the appellants.

*Mr. A. Saxey* for the respondent.

(1) See *Steele* v. *Boley*, post, overruling this decision.

HENDERSON, J.:

This is an action of ejectment, brought by Steele in the district court, for twenty acres of land. The complaint is in the ordinary form in ejectment. To this complaint the defendants filed their answer, setting up a general denial, and pleading affirmatively: *First*, the statute of limitations, claiming adverse possession for seven years under a contract on the part of respondent to convey said land to defendants, of which they ask specific performance; *second*, that plaintiff is, in equity, estopped from claiming title to the land in controversy. To this answer plaintiff demurred, and as grounds of demurrer claimed: *First*, that the contract set forth in the answer was void, as contrary to the provisions of the land laws of the United States, and against their policy, and that it appears from their answer that the statute of limitations had not run; *second*, that the facts did not constitute an estoppel. The district court sustained this demurrer, and final judgment was entered in favor of the plaintiff, and this appeal is from that judgment. The allegations of the answer are substantially as follows: That in 1876 one Wilson located upon one hundred and sixty acres of public land, which includes the twenty acres in controversy, with the intention of filing upon it. Afterwards he released his claim and possession to plaintiff, the plaintiff agreeing, in consideration of such release, to deed to Wilson, or his successors in interest, the twenty acres in question, upon procuring a patent therefor, without expense or further charge to Wilson. The land was thereupon pre-empted by plaintiff, and immediately thereafter Wilson sold and conveyed to defendant the twenty acres in controversy, for $125, paid by defendants to Wilson therefor. That such purchase from, and payment to, Wilson was made in pursuance of an express agreement and understanding between the plaintiff and defendants that they might safely purchase such interest, and that plaintiff would convey said land to them upon procuring the patent pursuant to his agreement with Wilson. That thereupon, and in pursuance of such purchase and agreement, the defendants entered into the possession of said land in con-

troversy, and have ever since quietly, peaceably, and un-
interruptedly enjoyed the same. That in 1880 the
plaintiff made his final proof at the United States land
office, paid the entire purchase price therefor, and received
his final certificate of purchase, and thereby became
entitled to a patent for the one hundred and sixty acres,
and that pursuant to such proof, payment, and certificate
of purchase, a patent was issued to plaintiff in 1886. That
defendants were at all times competent pre-emptors under
the law, and have never exercised their pre-emption privi-
lege. That since plaintiff made his final proof and
payment, in 1880, the defendants, with the knowledge and
acquiesence of plaintiff, continued to occupy said lands in
controversy for farming purposes, claiming title thereto,
and have from year to year improved the same, and laid
out large sums of money in permanent improvements
thereon.

This action was commenced June 20, 1880. The plain-
tiff claims in support of his demurrer that the contract set
up by the answer is wholly illegal, and in violation of
Rev. St. U. S., Sec. 2262, which provides that before an
entry shall be allowed the claimant shall make oath that
"he has not, directly or indirectly, made any agreement or
contract, in any way or manner, with any person or per-
sons whatsoever, by which the title which he might
acquire from the government of the United States should
inure, in whole or in part, to the benefit of any person
except himself." That the plaintiff, in order to make his
entry and complete his purchase, would have to take an
oath in violation of this section. That all the parties to
the contract are chargeable with notice of that fact, and
that they are therefore *in pari delicto.* That neither
can have specific performance of the contract, and that it
cannot be the foundation of an equitable estoppel, and
the statute of limitations does not begin to run until the
patent actually issues.

The defendants claim that the statute above referred to
only relates to agreements by which one party is to enter
land in trust for another, and has no reference to a per-
sonal contract by which a party agrees in the future to

sell the lands to which he may acquire a title from the government; but that, if it does apply, it operates only upon the pre-emptor, and that as between the parties the purchaser may have specific performance, and that the plaintiff cannot set up or take advantage of his own fraud, and that the statute of limitations begins to run from the date of final proof and payment.

We deem it unnecessary to discuss all the questions raised by the parties relative to the construction of Sec. 2262 of the Revised Statutes, above referred to. It will be seen that, by the case stated in the answer, the defendants have been in possession of the lands in controversy for full seven years and ever since the plaintiff made his final proof and payment, and received his final certificate from the Government. The statutory period of limitations under the laws of this Territory is seven years. Comp. Laws 1888, §§ 3129, 3131.

The plaintiff contends that, under the patent actually issued, the title to the land remained in the Government, and that the statute will not run against the Government, and consequently it will not run against the grantee of the Government until it has parted with the title by a patent regularly issued; and he relies mainly upon the case of *Gibson* v. *Chouteau*, 13 Wall, 92. That case did not arise under the pre-emption laws of the United States; but the patent was acquired under a special act of Congress providing for the relief of sufferers by the New Madrid earthquakes, occurring in 1812. Preliminary proceedings were taken in 1818 to perfect a title under that act, but the final certificate showing that all its provisions were complied with was not issued until March, 1862, and a patent was issued thereon in June 1862. The Supreme Court of Missouri held that, when the patent issued, by relation it dated back to the time when the entry was first made, and that therefore, the statute of limitations would run during the pendency of the proceedings, and before the final certificate or patent was issued. On appeal to the Supreme Court of the United States, that court (*supra*) held that the statute did not begin to run until the patent issued. No distinction is made in that case between the issuing of the final

certificate and the date of the patent, as it was immaterial, the statutory period not having elapsed since either. It has been repeatedly held by the Supreme Court of the United States that when a pre-emptor of public lands has made his final proof, and made full payment, and nothing remains to be done but to issue the patent, the purchaser has such a title to the land that he can convey it, and that a subsequent sale and grant by the Government of the same lands to another would be absolutely void. *Wirth* v. *Branson,* 98 U. S. 118; *Frisbie* v. *Whitney,* 9 Wall. 187; *Carroll* v. *Safford,* 3 How. 441.

In the case of *Stark* v. *Starrs,* 6 Wall. 402, the Supreme Court of the United States used the following language: " Where the right to a patent has once become vested in a purchaser of public lands, it is equivalent, so far as the Government is concerned, to a patent actually issued. The execution and delivery of the patent after the right to it has become complete are the mere ministerial acts of the officers charged with that duty;" and this language has been repeated and approved by the Court in at least two cases since: *Barney* v. *Dolph,* 97 U. S. 652; *Simmons* v. *Wagner,* 101 U. S. 260. If, then, the purchaser of lands from the Government, when he has become fully entitled to a patent, and nothing remains but to deliver it to him, has such an estate in the lands that he may convey the same by deed, and in case of death it descends to his representatives the same as other lands held in fee, and, "so far as the Government is concerned, it is equivalent to a patent actually issued," it is difficult to see why the statute of limitations will not begin to run against him from the time his right to the property is perfected in favor of one who has possession of the land, claiming the title which the purchaser has thus derived from the Government. In the case of *Gibson* v. *Chouteau, supra,* relied upon by plaintiff, the party there seeking to set up the statute of limitations did not in any way connect himself with the title or right of the party claiming under the patent. The case shows that an attempt to do so was made and failed; and the case, therefore, was that a party was seeking to set up the statutory bar who had nothing but a mere naked

possession, and that during the time that the Government owned the land, and before the right to a patent accrued. In the case at bar the defendants entered and have been in possession for over· seven years since the plaintiff acquired his right to a patent, claiming that they were the owners of the title thus acquired by him. *Manly* v. *Howlitt.* 55 Cal. 95, cited by plaintiff, is a case where the Court held that the statute of limitations did not begin to run upon the issuance of the certificate purchased by the State, and before the patent issued, because there were still acts to be performed by the holder of the certificate before he would be entitled to a patent under the laws of the State; that certain payments were yet to be made; and in *King* v. *Thomas*, 12 Pac. Rep. 865, which arose under the laws of the United States relative to patents of mining lands, it was held that the statutes did not apply, there being other conditions yet to be performed by the claimant under his entry.˙ In the State Courts it has been repeatedly held that, under the pre-emption laws of the United States when the pre-emptor has fulfilled· all the conditions on his part, and received a final certificate entitling him to a patent, the title is vested in the pre-emptor, *Cavender* v. *Smith*, [Iowa] 56 Amer. Dec. 541; *Goodlet* v. *Smithson*, [Ala.] 30 Amer. Dec. 561; *Knight* v. *Leary*, 11 N. W. Rep. 600; and that the statute of limitations begins to run from the date of such certificate, *Cady* v. *Eighmy*, [Iowa,] 7 N. W. Rep. 102; *Udell* v. *Peak*, 9 S. W. Rep. 786; *Nicholas* vs. *Council* [Ark.] 9 S. W. Rep. 305; *Doe* v. *Hearick*, 14 Ind. 242.

We are of the opinion that where a pre-emptor of public lands has made and submitted his final proofs, made full payment, and received his final certificate entitling him to a patent, and nothing remains to be done but for the officers charged with that duty to make and deliver him a patent therefor, and a patent has afterwards been issued upon such certificate, the statute limitations will run as against him in favor of one who is in possession, claiming to own the land, and to have acquired the title thus acquired by the pre-emptor from the date of such certificate. The judgment of the Court below sustaining the

demurrer to the answer is reversed, with costs, and the cause remanded.

ZANE, C. J., and ANDERSON, J., concurred.