JENKINS, Circuit Judge
(after stating the facts as above). Assuming, as we must, the truth of the allegations of fact stated in the bill, it is established that Davidson located under his warrant the 172 acres of land in the H. § of section 12 embraced within the red lines of the plat. This is rendered certain by the entry of the register of the land office upon the plat. It is also clear that Dunfield in fact purchased the lot in the H. W. \ of the S. W. \ of the section, wrongly numbered 2, and not the lot located by Davidson, wrongly numbered 4. He paid upon the basis of the acreage contained in that lot, which was less in amount than the acreage contained in lot 2; and upon the plat his entry was noted by the government officials upon the lot in the H. W. ¿ of the S. W \ of the section. Both mistakes in the entries and in the patents arose from the erroneous numbering of the respective lots upon the plat in the local land office. Dunfield conveyed, describing his lot as lying in the H. W. of the S. W. -£ of the section, thus emphasizing the fact that he claimed lot 4, and not lot 2. It results that when lot 2 was so located by Davidson, the United States held the legal title thereto, as trustee for the benefit of Davidson, and upon conveyance of that title to another “the grantee with notice took it subject to the equitable claim of the first purchaser, who could compel its transfer to him. In all such cases a court of equity will convert the second purchaser into a trustee of the true owner and compel him to convey the legal title.” Cornelius v. Kessel, 128 U. S. 456, 460, 9 Sup. Ct. 122. The government had received from Davidson the consideration for lot 2. It intended to sell, and the officers supposed they had sold, that lot to Davidson; and the latter intended to purchase, and supposed he had purchased, it. The *464 government was, therefore, bound in good morals and in law to grant the legal title to the property purchased (U. S.v. Hughes, 11 How. 552), and was clearly bound to correct the mistake occurring through the error of its officials. This correction could have been made under sections 2369-2372, Rev. St., upon proper application prior to the issuance of the patent to Dunfield; and doubtless, if such application had been made, the error would have been corrected.
Upon conveyance by the government of the lot so sold to Davidson, the purchaser with notice of Davidson’s rights is charged as trustee of the true owner. So Dunfield, not intending to purchase lot 2, but receiving legal title thereto through the mistake of the officers of the government, is also chargeable as trustee for the true owner, as was Davidson chargeable by virtue of the patent to him of lot 4, as trustee for Dunfield. So likewise are Dunfield’s grantees, who took title under similar mistake, supposing they were purchasing, and intending to purchase, lot 4, and not lot 2. Cohn knew of the mutual mistakes and designed to obtain an unjust advantage. He in fact purchased lot 4, but induced his grantor to convey a lot which he did not purchase. This was an imposition upon his grantor, who was innocent of any designed wrong, being only the victim of the mistake of the officers of the government; but Cohn cannot be regarded as an innocent purchaser, since he had notice of the errors of description.
Possibly a more difficult question touches the right of the grantees of Davidson to avail themselves of the mistake. Each of them supposed he was purchasing, and intended to purchase, and each grantor supposed he was selling, and intended to sell, lot 2. The several mistakes in description arose from the original error of the government officials in marking the plat. Davidson, then having the equitable title to lot 2, and supposing that he had the legal title thereto under its description as lot 4, undertook to convey his interest in all the property in section 12 which he had located under his land warrant; and by his deed, although by wrong description, conveyed his equitable interest therein, which, through like successive conveyances, passed to the appellant. We see no valid objection to sustaining the right of the appellant to have correction of an error that is common to both claims of title. A direct proceeding like the present would certainly avoid a multiplicity of actions. It would be, if the facts alleged are established, an unnecessary requirement that each grantee should proceed by separate bills against his immediate grantor, when the whole beneficial estate is vested in the appellant. It is not like the case of Crocker v. Bellangee, 6 Wis. 645, relied upon by the appellees. There the plaintiff’s grantor had conveyed to the defendant, and, as was alleged, had been imposed upon and defrauded in the sale. Thereafter, without attempt at rescission, the grantor conveyed the same property to the plaintiff, who filed his bill to set aside his grantor’s conveyance to Bellangee, seeking to avail himself of the fraud- practiced on his grantor. It was held, and we think rightly so, that the fraudulent sale was voidable, not void, and then only at the election of the party defrauded; that the title, both legal and equitable, had passed by the conveyance to Bellangee, subject *465 to be defeated, if obtained by fraud, only by direct action of tbe party defrauded; and that tbe subsequent conveyance to Crocker by tbe grantor of Bellangee did not devest tbe title. To tbe like effect is Graham v. Railroad Co., 102 U. S. 148. But here Davidson bad tbe equitable title. Tbe United States held tbe legal title in trust for bim. It later conveyed tbe legal title through error, and Dunfield, tbe grantee, and those bolding under bim, took it with notice of tbe error, or under such circumstances that in equity they must be charged as trustees. Davidson conveyed bis equitable title supposing be bad tbe legal title. Although tbe original error of description runs through tbe entire chain of title, we .must bold that tbe effect of tbe conveyances is in equity to vest tbe equitable title to lot 2 in tbe appellant. This conclusion is sustained by authority which we are not at liberty to disregard. Thus, in May v. Adams, 58 Vt. 74, 3 Atl. 187, two tenants in common divided their lands by deed of partition. There was a mutual mistake in tbe deed in that tbe language did not correctly describe tbe line agreed upon. Tbe agreed line was recognized and understood by them to be tbe one described in tbe deed so long as they were tbe owners, and tbe parties to tbe suit purchased with like understanding, and recognized it for several years. It was held that tbe mistake was remediable in equity both between tbe original owners and their grantees. So, also, in Widdicombe v. Childers, 124 U. S. 404, 8 Sup. Ct. 517, Smith, tbe grantor of tbe defendant, purchased at tbe proper land office tbe southeast quarter of a section; but tbe register by mistake described it in tbe application as tbe southwest quarter, and tbe entry in tbe plat book showed tbe purchase and sale of the southeast quarter. Tbe plaintiff, with full knowledge of these facts, afterwards located and obtained a patent for tbe southeast quarter. It was held that be was a purchaser in bad faith, and that bis legal title, though good as against tbe United States, was subiect to the superior equities of Smith and of those claiming under him. We are unable to distinguish between that case and tbe one in band. Tbe facts bear remarkable similarity. To like effect is Hoyt v. Gooding, 99 Mich. 71, 58 N. W. 41.
It is alleged that this bill should not be sustained, because of laches. Tbe location by Davidson was made June 10, 1869. Tbe suit was brought in tbe year 1893. Tbe lands are known as “pine lands,” and were for many years after tbe entry remote from railway communication. They doubtless were obtained, as most lands of similar character in the northern section of tbe state were purchased, with a view to tbe prospective increase in value of pine timber. It is true that nearly 24 years bad elapsed prior to tbe filing of tbe bill to correct tbe error. But that is not controlling. There must be neglect in tbe enforcement of a right, and such negligence presupposes knowledge of one’s right. So laches may be excused from ignorance of one’s right or from tbe obscurity of tbe transaction. What is required is that one seeking tbe aid of equity should use reasonable diligence in bis application for relief. Thus in Galliher v. Cadwell, 145 U. S. 368, 372,12 Sup. Ct. 873, it is said that tbe decisions on tbe question of laches “proceed on the assumption that tbe party to *466 whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him now to assert them.” And on page 373, 145 U. S., and page 874, 12 Sup. Ct., it is said that “laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or the parties.” In Halstead v. Grinnan, 152 U. S. 412, 416, 14 Sup. Ct. 641, it is observed:
“The length of time during which the party neglects the assertion of his rights, which must pass in order to show laches, varies with the peculiar circumstances of each ease, and is not, like the matter of limitations, subject to an arbitrary rule. It is an equitable defense, controlled by equitable considerations, and the lapse of time must be so great, and the relations of the defendant to the rights such, that it would be inequitable to permit the plaintiff to now assert them.”
See, also, Alsop v. Riker, 155 U. S. 448, 15 Sup. Ct. 162; Gildersleeve v. Mining Co., 161 U. S. 573, 16 Sup. Ct. 663.
•Applying these principles to the facts stated in the bill, we are unable to say that the appellant or any of his grantors is properly chargeable with laches. We can discover here no sleeping upon one’s rights, or any negligence in ascertaining those rights. There was no assertion of claim to this lot 2 by any one other than Davidson’s grantees until the month of August, 1892, when Cohn, with knowledge of the mistakes, designedly imposed upon his grantor, and obtained a legal title to the lot which he had not purchased, and which his grantor did not claim. That was the first assertion of an adverse claim to the property to which the appellant had equitable title. There was no actual invasion of the possession until December, 1892, and thereafter the appellant proceeded with diligence, both by notification to the parties and by suit, in the assertion of his rights. During the period between the location of the lands by Davidson and the assertion of title by Cohn there was nothing to put the parties upon inquiry with respect to the mistake. An investigation of the records of the land office at Stevens Point or Wausau would not have suggested an error; to the contrary, would have confirmed them in the belief that there was no error. It is true that an examination of the plat in the general land office at Washington would have disclosed the mistake, but, without anything to put them upon inquiry, and in the absence of any adverse claim to the property, we are not prepared to say that diligence required a journey to Washington, or communciation with the general land office at Washington, to verify the correctness of the government plat in the land office at Stevens Point or Wausau. There was, therefore, no negligence in failing to apply for a correction of the error under sections 2369, 2372, Rev. St. Neither Davidson nor his grantee knew, or could reasonably be charged with knowledge, of the errors prior to the assertion of title by Cohn. Until then they had no knowledge of their rights, and *467 there was no sleeping upon their rights; nor has Dunfield or any of his grantees been prejudiced by the lapse of time.
It is also asserted that the appellant’s right of action is barred by the statute of limitations of the state of Wisconsin. Subdivision 4, § 4221, Rev. St. Wis., classifies actions which must be commenced within 10 years, and the subdivision is as follows: “An action which, on or before the 28th day of February in the year 1857 was cognizable by the court of chancery, when no limitation is prescribed in this chapter.” It is true that a suit to correct a mistake in a deed must be brought within 10 years, and that the term commences at the delivery of the defective deed. Parker v. Kane, 4 Wis. 1. But the statutes of Wisconsin also provide (section 4231):
“If, when the cause of action shall accrue against any person, he shall be out of this state, such action may be commenced within the terms herein respectively limited, after such person shall return to or remove to this state. But the foregoing provision shall not apply to any case where, at the time the cause of action shall accrue, neither the party against or in favor of whom the same shall accrue is a resident of this state; and if, after a cause of action shall have accrued against any person, he shall depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action.”
This provision of law. clearly indicates tbe intention of the legislature of the state with respect to the application of the statutes of limitations, that there must be a person who may be sued, and one upon whom process may be served. Thus section 4233 provides that the statute of limitations shall not operate against infants, insane persons, or a person imprisoned upon a criminal charge, during the time of such disability. From 1869, when the mistake occurred, and a cause of action arose in favor of Davidson, to October 20, 1885, when Dunfield made his entry, the legal title to lot 2 was in the United States, the equitable title being in Davidson. It was not possible for Davidson to assert his right during that period, for the sovereign is exempt from suit. Under such circumstances it would be most unjust to apply the statute of limitations. Such statutes do not bind the sovereign without its consent. They cannot bind the individual in the assertion of a right as against the sovereign exempt from suit. We cannot believe that the legislature of the state designed that it should have such an application. The suit was brought within 10 years after the conveyance of the legal title to Dunfield. We are of opinion that the court below erred in sustaining the demurrer to the bill, and that the decree dismissing the bill must be reversed, and the cause remanded for further proceedings in conformity with this opinion.