Carter's Alaska Codes, approved June 6, 1900, § 1042, provides that adverse possession under color of title for seven years shall be conclusively presumed to give title, except as against the United States; and page 146, § 4, limits actions to recover real property to a period of ten years before commencement of the action, but declares that in all cases where a cause of action has already accrued, and the period prescribed within which an action may be brought has expired or will expire within one year·from the approval of the act, an action may be brought within one year from the date of the approval of the act. *Held*, that where an action to recover possession of a mining claim in Alaska was brought on December 24, 1900, section 1042 was not applicable thereto.

2. SAME—UNITED STATES LAND LAWS—RIGHTS OF GRANTEE—LIMITATIONS.

Limitations begin to run against a grantee under the general land laws of the United States only from the date when he acquires title.

3. SAME—ADVERSE POSSESSION—DISSEISIN.

Since there could be no adverse possession of public land on which a mining claim was located while the title was in the United States, there was no disseisin sufficient to start the statute of limitations in operation, as against the locator of such claim, prior·to the issuance of a government patent to him therefor.

4. SAME.

Where a locator of a mining claim on public land had complied with all the conditions necessary to entitle him to a patent, his estate in the land was not perceptibly different from that acquired by entrymen of agricultural land.

In Error to the United States District Court for the First Division of the District of Alaska.

See 121 Fed. 709.

The plaintiff in error, the Tyee Consolidated Mining Company, brought an action in ejectment against Ernest Langstedt, the defendant in error, to recover the possession of a tract of land which was alleged to be a portion of the Bonanza King lode claim, located by a grantor of the plaintiff in error, and of which the plaintiff in error became the owner by mesne conveyances. The defendant in error answered, denying the allegations of the complaint, and alleging that the defendant in error and his grantors and predecessors in interest have been in the actual, open, notorious, visible, continuous, exclusive, and adverse possession of the property in controversy for a period of more than 10 years prior to the commencement of the action, and that during that entire period the defendant in error and his grantors have claimed to be the owners of said tract of land under color and claim of title, and that the plaintiff in error and its grantors and predecessors have not been seised or possessed of the premises for more than 10 years prior to the commencement of the action. Upon the issues so made, and the evidence and stipulation of the parties as to the facts of the case, a jury having been waived, the court below made the following findings of fact: That the Bonanza King lode claim was duly located as a mining claim on January 29, 1884, by one Walter Pierce; that on May 13, 1884, he conveyed the same to M. W. Murray; that a receiver's receipt issued to Murray on May 20, 1890, and that United States patent issued to him on December 26, 1890; that thereafter the said lode claim was conveyed to the plaintiff in error; that the defendant in error and his grantors and predecessors in interest have been in the actual, open, notorious, visible, continuous, exclusive, and adverse possession of the premises in controversy, under color and claim of title, for a period of more than 10 years prior to the commencement of the action, and that during that period and ever since they have claimed to be the owners of said land, and their possession has been adverse and hostile to the plaintiff in error; that the plaintiff in error, its predecessors in interest, and grantors, have not been seised or possessed of the premises within 10 years before the commencement of the action. Upon those findings the trial court caused judgment to be entered dismissing the action, and adjudging that the defendant in error recover his costs and disbursements.

R. F. Lewis, E. S. Pillsbury, and Pillsbury, Madison & Sutro, for plaintiff in error.

W. E. Crews and J. A. Hellenthal (Lorenzo S. B. Sawyer, of counsel), for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The writ of error presents the question whether, in the territory of Alaska, adverse possession of a mining claim, as against the locator thereof, or his successors in interest, can be initiated at any time before the issuance of a patent from the United States therefor.

Section 1042 of Carter's Codes of Alaska (page 354) provides as follows:

"The uninterrupted adverse notorious possession of real property under color and claim of title for seven years or more shall be conclusively presumed to give title thereto except as against the United States."

Section 4 of the same Codes, at page 146, provides that actions shall be commenced within 10 years—

"For the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it shall appear that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within ten years before the commence-

ment of the action: provided, in all cases where a cause of action has already accrued, and the period prescribed in this section within which an action may be brought has expired or will expire within one year from the approval of this act, an action may be brought on such cause of action within one year from the date of the approval of the act."

The Codes in which these provisions are found were approved on June 6, 1900. The present action was begun on December 24, 1900. It is plain that the provision first above quoted has no application to the present case. This is made clear by the proviso of section 4, above quoted, which extends the right of action for a period of one year from the approval of the act, and by that portion of section 368, p. 432, of the Codes, which declares that "no person shall be deprived of any existing legal right or remedy by reason of the passage of this act." Prior to the adoption of the Codes, adverse possession, in order to give title, was required to be continuous for a period of 10 years. Parker v. Metzger, 12 Or. 407, 7 Pac. 518.

It is well settled that the statute of limitations begins to run against a grantee under the general land laws of the United States only from the date when he acquires the title, and that an occupancy by another prior to that time will not be deemed adverse to the title of such grantee. But there is diversity of opinion as to the precise time when the title passes from the government to an entryman upon the public lands. In the majority of cases it is held that no title passes until the patent issues. Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83, 33 L. Ed. 327; Simmons v. Ogle, 105 U. S. 271, 26 L. Ed. 1087; Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534; Godkin v. Cohn, 80 Fed. 458, 25 C. C. A. 557; Mathews v. Ferrea, 45 Cal. 51; Smith v. McCorkle, 105 Mo. 135, 16 S. W. 602; Steele v. Boley, 6 Utah, 308, 22 Pac. 311; Treadway v. Wilder, 12 Nev. 108; Stephens v. Moore, 116 Ala. 397, 22 South. 542; Schuttler v. Piatt, 12 Ill. 417; Clark v. Southard, 16 Ohio St. 408; Churchill v. Sowards, 78 Iowa, 472, 43 N. W. 271.

In some courts, however, it has been held that the title passes to such an entryman as soon as he has complied with all the conditions requisite to entitle him to a patent, and that at that point of time an adverse possession may have its inception. Carroll v. Patrick, 23 Neb. 847, 37 N. W. 671; Dolen v. Black, 48 Neb. 688, 67 N. W. 760; Cady v. Eighmey, 54 Iowa, 615, 7 N. W. 102; Mills v. Traver, 35 Neb. 292, 53 N. W. 67; Cawley v. Johnson (C. C.) 21 Fed. 492; Nichols v. Council, 51 Ark. 26, 9 S. W. 305, 14 Am. St. Rep. 20; Gay v. Ellis, 33 La. Ann. 249; Doe v. Hearick, 14 Ind. 242; Goodlet v. Smithson (Ala.) 30 Am. Dec. 561; Udell v. Peak (Tex. Sup.) 7 S. W. 786.

It is contended that a controlling consideration on which the decisions of the United States courts above cited are based is the fact that in those courts no action of ejectment can be instituted upon the equitable title evidenced by a certificate of purchase or final receiver's receipt, and that that rule is not applicable to the present case, for the reason that in the courts of Alaska ejectment may be maintained by one who has acquired such equitable title. By the act of Congress of May 17, 1884 (23 Stat. 24), the Code of Civil Procedure of the state of Oregon was declared to be the law of Alaska so far as the same was

applicable; and thereafter, when the Code of Civil Procedure for Alaska was adopted by the act of June 6, 1900, it was taken from the laws of Oregon, both as to the provisions regulating the action of ejectment, and prescribing the interest in real estate upon which the action may be brought, and the statute of limitations applicable to such actions. In Keith v. Cheeny, 1 Or. 285, it was held that the donee of a land claim, having received a donation certificate thereto, could maintain ejectment against one who showed naked possession, with no color of title; and in Rader v. Allen, 27 Or. 344 (decided in 1895) 41 Pac. 154, it was held that, after the performance of all the requirements of the laws and regulations for the acquirement of a patent to a mining claim, the locator, having thus acquired a vested right in the land and a legal estate therein, might maintain ejectment to recover its possession. Said the court of such a mining claim after the performance of those conditions, "It then ceases to become a part of the public domain." But the rule of the federal courts that the statute of limitations does not begin to run against a grantee of the United States until the issuance of the patent does not rest alone upon the ground that ejectment cannot be maintained in those courts by such an entryman before the patent issues. In Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83, 33 L. Ed. 327, it was said that until the title passes from the government there is no title adverse to the entryman. In Gibson v. Chouteau, 13 Wall. 92, 100, 20 L. Ed. 534, the court said:

"The same principle which forbids any state legislation interfering with the power of Congress to dispose of the public property of the United States, also forbids any legislation depriving the grantees of the United States of the possession and enjoyment of the property granted by reason of any delay in the transfer of the title after the initiation of proceedings for its acquisition. The consummation of the title is not a matter which the grantees can control, but one which rests entirely with the government. With the legal title, when transferred, goes the right to possess and enjoy the land, and it would amount to a denial of the power of disposal in Congress if these benefits, which should follow upon the acquisition of that title, could be forfeited because they were not asserted before that title was issued."

In Bagnell v. Broderick, 13 Pet. 450, 10 L. Ed. 235, the court recognized the power of the states to pass laws authorizing purchasers of lands from the United States to prosecute actions of ejectment upon certificates of purchase, but denied "that the states have any power to declare certificates of purchase of equal dignity with a patent. Congress alone can give them such effect." The court further said:

"Congress has the sole power to declare the dignity and effect of titles emanating from the United States, and the whole legislation of the government in reference to the public lands declares the patent to be the superior and conclusive evidence of legal title. Until it issues, the fee is in the government, which by the patent passes to the grantee, and he is entitled to recover the possession in ejectment."

In Sparks v. Pierce, 115 U. S. 408, 413, 6 Sup. Ct. 102, 105, 29 L. Ed. 428, the court said of the right of a mineral claimant:

"Mere occupancy of the public lands and improvements thereon give no vested right therein as against the United States, and consequently not against any purchaser from them."

Referring to the decisions of the Supreme Court of Oregon, we find that in that state it has been held that possession cannot be adverse

to an entryman under the general land laws so long as the legal title remains in the United States. In Joy v. Stump, 14 Or. 361, 12 Pac. 929, it was said that possession, in order to be adverse, must be exclusive. In Altschul v. O'Neill, 35 Or. 202, 58 Pac. 95—a case decided before the enactment of the Code of Alaska—upon a careful and well-considered review of the authorities, it was held that to constitute adverse possession there must be, among other requisites, an entry under claim of right hostile to the true owner and to the world, and that an occupant of land cannot hold adversely while he admits the title to be in the United States; thus adopting the doctrine of the United States courts in Ward v. Cochran, 150 U. S. 597, 14 Sup. Ct. 230, 37 L. Ed. 1195, Henshaw v. Bissell, 18 Wall. 255, 21 L. Ed. 835, Bracken v. Union Pacific Ry. Co., 75 Fed. 347, 21 C. C. A. 387, and Pillow v. Roberts, 13 How. 472, 14 L. Ed. 228, in which it was said that possession, in order to be adverse, must be adverse to all the world. We are compelled to hold, therefore, that there was no possession of the disputed premises adverse to the plaintiff in error prior to the date of the issuance of the patent to its mining claim. If there was no adverse possession, there was no disseisin, and until disseisin the statute of limitations of Alaska could not begin to run. In United States v. Arredondo, 6 Pet. 743, 8 L. Ed. 547, the court said:

"The law deems every man to be in the legal seisin and possession of land to which he has a perfect and complete title. This seisin and possession is coextensive with his right, and continues till he is ousted thereof by an actual adverse possession."

The ruling of the court below in holding that the possession of the defendant in error was adverse prior to the time of the issuance of the patent was based upon the consideration that the laws regulating the disposal of mineral land are essentially different from those that control the disposal of agricultural lands, and confer upon the locator of a mineral claim an estate of such a nature as to render inapplicable thereto the doctrine that the statute of limitations begins to run only from the time of t' e issuance of the patent. It is true that the locator of a mineral claim has, prior to the issuance of the final receiver's receipt, a broader control over his claim, and a higher estate therein than an entryman of agricultural land. But after full compliance with all of the conditions upon which a patent is authorized to be issued, there is no perceptible difference in the two estates. In cases where the question has been presented for adjudication, the courts have uniformly held that the statute of limitations does not begin to run against the claimant of a mining claim before his patent issues. Nessler v. Bigelow, 60 Cal. 98; South End Mining Co. v. Tinney et al., 22 Nev. 221, 38 Pac. 401; King v. Thomas, 6 Mont. 409, 12 Pac. 865; Weibold v. Davis, 7 Mont. 107, 14 Pac. 865; Mayer v. Carothers, 14 Mont. 274, 36 Pac. 182; Clark v. Barnard, 15 Mont. 176, 38 Pac. 834; Miser v. O'Shea, 37 Or. 231, 62 Pac. 491, 82 Am. St. Rep. 751.

It follows that the judgment of the court below must be reversed and the cause remanded, with instruction to enter a judgment for the plaintiff in error.