## VALENTINE v. McGRATH et al.

### (First Division. Juneau. May 16, 1910.)

### No. 613A.

1. PUBLIC LANDS (§ 39*)—TOWN SITES IN ALASKA.

The regulations of the Department of the Interior, June 12, 1903, regarding town sites in Alaska, provide that the trustee "will observe and follow as strictly as the platting of the town site will permit the rights of all parties to the property claimed by them as shown by the records of the clerk of the District Court of Alaska." It is the policy of this law and its administration to award the entire lot to the occupant and bring the possession and interests of the occupants of the town site into something like order and not leave their holdings interlocked and dovetailed.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 83–90, 92–99; Dec. Dig. § 39.*]

2. EQUITY (§ 46*)—BOUNDARIES—REMEDY AT LAW.

Plaintiff and defendants owned adjoining town lots in Alaska. Defendants erected a valuable building on his lot, and by mistake it covered a wedge-shaped piece of plaintiff's lot 18 inches wide at the wide end and running 40 inches to a point which, owing to the irregular boundary lines, lay within a straight line drawn along defendant's lot; the wedge was of little value. Held, that equity would not compel the defendant to disfigure his building by cutting out the shape of the fraction but would remit plaintiff to his suit for its value.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 151, 152, 157, 159–163; Dec. Dig. § 46.*]

3. LIMITATION OF ACTIONS (§ 44*)—PUBLIC LANDS.

To start the statute of limitations running against plaintiff he must have been disseised, and, in order to be disseised, he

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

must at some time have been seised of title, either of fee or freehold, and this he was not until the issuance to him of patent.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 220–230, 232; Dec. Dig. § 44.*]

This is a suit by plaintiff against the defendant J. J. McGrath and his tenant, for the recovery of the possession of real property and damages for its detention.

The plaintiff filed his complaint in this court April 26, 1907, alleging in three causes of action: That plaintiff is the owner of lot 1, block 3, in the Town of Juneau, Alaska, of lots 2 and 3 in said block, and of a portion of lot 1 in block G, described in said complaint; that defendants in 1901 wrongfully ejected plaintiff from a portion of the several tracts above described, and alleging the rental value of such portion.

The defendant McGrath answered in said cause, denying the cause of action in plaintiff's complaint, and interposing an affirmative defense alleging the entry of the town site of Juneau the 13th day of October, 1893, and patenting of the town site September 4, 1897; that in 1882 defendant's grantor entered and took possession of certain of said lands, including all the land claimed by plaintiff and defendant; that defendant acquired these lands from him December 9, 1889, and remained and was in the actual occupation and exclusive possession on the date of the entry of the town site, making valuable improvements thereon; that the trustee of said town site gave notice pursuant to the regulations of the Secretary of the Interior that he would on the 15th day of November, 1897, set apart lots and parcels of land in said town site to the occupants thereof, and thereafter, on the 20th day of July, 1898, the plaintiff falsely and fraudulently represented to the trustee that he and his grantors were the owners, entitled to the possession of the lands described in plaintiff's complaint, and the trustee on said date did "actually hear and determine on said false and fraudulent statements the said questions of said occupancy and ownership of said lots, and, acting under the belief that said statements were true, executed to the plaintiff a trustee's deed" conveying to plaintiff lots 1 and 3 in

block 3 and that portion of lot 1 in block G described in the complaint; that, upon a contest between plaintiff and defendant before the trustee concerning lot 2 in block 3, the trustee on the 28th day of March, 1899, made a decision awarding the defendant a portion of said lot; that, upon the plaintiff's appeal, said decision was affirmed by the Commissioner of the General Land Office and the Secretary of the Interior, and the trustee deeded the same to defendant. The defendant prays to be decreed the owner, entitled to the possession of all the land in dispute, and further prays that the plaintiff be compelled to convey to the defendant the portions of lots 1 and 3 in block 3 and lot 1 in block G included within the boundaries of the property conveyed to him as alleged.

Upon the motion of plaintiff for judgment on the pleadings, judgment was entered in this court in 1908, decreeing that plaintiff recover from the defendant possession of the southeast corner of lot 1, block 3, being a triangular piece of ground 3⅓ feet by 3⅓ feet by 1½ feet, and two parcels of ground in lot 3, block 3, awarding the plaintiff damages for the detention of said property in the sum of $1,128, said judgment upon motion of plaintiff to dismiss the third cause of action as affecting the land in lot 1 in block G it was so adjudged. Upon writ of error to the Court of Appeals sued out by the defendant, said cause was reversed (167 Fed. 473, 93 C. C. A. 109) and demanded on account of the judgment being given for the amount of damages prayed in the complaint over the general denial in defendant's answer.

Upon the coming down of the mandate to this court, the defendant McGrath interposed a further amended answer, which, in addition to general denials of the allegations of plaintiff's complaint, pleads to each of said causes of action the defense of seven years' actual, uninterrupted, exclusive, adverse, open, notorious, continuous, and hostile possession and occupancy of the premises in controversy immediately prior to the commencement of the action, under color and claim of title; and, second, alleging that neither the plaintiff nor any of his ancestors, predecessors, or grantors were seised or possessed of the premises described in said causes of action

at any time within ten years before the commencement of this action.

And by way of cross-complaint, for the purpose of securing equitable relief against the plaintiff, defendant alleges as in his former answer his purchase on the 9th day of December, 1889, of that portion of lot 1, block 3, in dispute, in the southeast corner of said lot, describing it as being 3.6 feet by 3.6 feet by 1½ feet, alleging the entry of the town site as above by the trustee, and that, at the time of said entry, the defendant was the sole owner and sole and actual occupant of the premises described; that nevertheless on the 3d day of December, 1897, while defendant was in such possession and occupancy and had made permanent and valuable improvements thereon, the plaintiff falsely and fraudulently, with intent to deceive and mislead the trustee into believing that plaintiff was and had been prior to and at the time of the entry the actual occupant of said premises and entitled to a deed therefor, and with the intent of cheating and defrauding defendant and depriving him of his property, represented that he was at the time of entry the actual occupant and owner of said premises and the whole thereof, and by reason of such representations the trustee did, on July 13, 1898, deed all of lot 1, block 3, to plaintiff; that defendant had no notice or knowledge of the application or the fact that a deed had been issued for a long time thereafter, and alleges that no time has ever been fixed by the Secretary of the Interior or any other officer under him within which parties are required to file their applications for deeds with the trustee, and alleging that no such notice had been given by the trustee; that said deed is wholly void, and constitutes a cloud upon defendant's title; that on January 18, 1898, the defendant made application to the trustee for the premises owned and occupied by the defendant in said blocks; that it was erroneously described as lying between lots 2 and 3 in block 3, whereas these lots joined, the one upon the other; that defendant, upon discovering this error, employed a surveyor who surveyed the land claimed by him, and defendant's application for deed was

amended to conform to said survey; that said survey was erroneous in that it failed to disclose defendant's occupancy of that portion of lot 1, block 3, described; that, at the time of this survey, the defendant had erected and maintained a large two-story store building on said premises, and that the westerly side wall of said building stands upon, includes, and covers all of said premises; that this could be seen without difficulty upon inspection of the premises, but that the lines and corners of the various lots into which the town site had been divided by the survey of the town-site trustee were not marked, and the boundaries of the various lots in said town site could not be determined by any one except a surveyor with the proper instruments for the purpose, and even then with the greatest difficulty; that the surveyor employed by the department failed to find the lines and corners of lot 1, block 3, and failed to disclose in his survey that said building covered said portion of said lot; that on the 14th day of January, 1901, pursuant to such application, the trustee executed a deed intending to convey to the defendant the premises described in said cross-complaint.

Concerning the second cause of action, the cross-complaint alleges color and claim of title since the 9th day of December, 1889, to the premises in dispute, and further alleges the entry of the town site, defendant's occupancy at that time, the maintenance of valuable improvements upon the land, plaintiff's fraudulent application to the trustee for deed, and the deeding by the trustee, as alleged in the first cause of action, of all of lot 3 in block 3 to the plaintiff; that this deed included a portion of the land occupied and owned by the defendant; that on January 3, 1898, defendant applied to the trustee for the premises owned by him in said blocks; that said application was faulty and defective in the manner above described because of the defect in defendant's deed; that defendant caused said parcel of land to be surveyed and said application amended in December, 1898, but that, prior to the filing of said amended application, the trustee had already executed a deed to lot 3, block 3, to the plaintiff herein,

and the trustee ruled that he had parted with all title to lot 3, and had no further jurisdiction in the matter, but, a deed not having been executed for lot 2, a hearing was ordered to determine plaintiff's and defendant's rights therein; that upon such hearing the trustee determined that defendant was entitled to a deed to all of the premises occupied by him in said lot; that, in describing said premises in his decision, the trustee through inadvertence and mistake omitted a strip of ground, off the north side of the land deeded to defendant, a foot and 6 inches wide, which at the time of the entry of the town site, and ever since, has been covered in its entirety by a resident block of the defendant; that at the time of the decision both plaintiff and defendant and the trustee believed the description covered and included all of the premises in lot 2 covered by the house of the defendant.

Defendant further alleges that, as concerning the first cause of action, all that portion of lot 3, block 3, occupied by him was deeded to the plaintiff by the trustee without notice to the defendant or knowledge by him until long after the deed had been issued. Defendant prays that plaintiff be decreed a trustee, holding title to said premises in trust for the defendant, and be ordered and decreed to convey the same by proper instrument to the defendant; that the deed issued by the trustee to the defendant be reformed; and that the defendant be decreed the sole owner in fee of the land involved, and for general equitable relief.

Plaintiff demurs to the sufficiency of the pleas of the statutes of limitation to the causes of action, and also denies the same. Plaintiff admits that he applied to the trustee at the times mentioned in the cross-complaint and received deeds to the lands described, but denies the other allegations connected therewith. He denies fraud and the errors and mistakes alleged in the cross-complaint of the trustee and surveyor; alleges that the decisions of the trustee have never been reversed, annulled, or modified. Plaintiff admits a mistake in the description in Exhibit A attached to defendants' cross-complaint, if the exhibit is a correct copy of the instrument.

Malony & Cobb, of Juneau, for plaintiff.

L. P. Shackleford and John Rustgard, both of Juneau, for defendants.

CUSHMAN, District Judge. Upon the trial a large amount of evidence was introduced, including the record in the contest before the trustee over lot 2 in block 3, the findings of the trustee, and the commissioner and secretary upon appeal from the trustee's decision.

The evidence shows: That the town of Juneau was settled and lots and blocks surveyed allotted, and occupied by the settlers in 1880. The lots in block 1, as originally located, were 50 feet wide by 200 feet long. That, prior to the entry of the town site by the trustee, block 1 had been divided into four blocks, leaving the lots 50 feet by 100 feet. That the lots in block 1 and 3 fronted on the north side of Front street; Front street coinciding with the breach or water front of Gastineaux Channel. That original block 1 was a long block, and that, for purposes of convenience, prior to the entry of the town site Seward street was put through the middle of block 1 from Front street. That Seward street was 34 feet wide, whereas the lots in the block were 50 feet wide. This, it is claimed, left a fraction of a lot in block 3, but the lots were, as it appears, rearranged, full 50-foot lots being recognized at each end of block 3; the defendant and his predecessors in interest giving and receiving deeds to land described as that "certain piece or parcel of land situated, lying, and being between lots 2 and 3 in block 3, as per Hanus plat." This, it would appear, was an effort to fix this fraction which had become afloat.

The official survey of the town site was approved by the United States marshal, ex officio surveyor general, on the 21st day of October, 1892, and the entry of the town site made on the 13th of October, 1893. By this official survey there was no parcel or fraction of land left between lots 2 and 3.

A great part of the evidence introduced concerning early occupancy and possession of the premises involved is contra-

dictory and unsatisfactory, but regarding the land described in the third cause of action in the complaint, as this cause of action was dismissed on plaintiff's own motion upon the first trial, I hold that that matter is now closed, and there will be no further judgment concerning it.

It would appear that no reasoning or authority other than that contained in the former decision of this case by the Court of Appeals, 167 Fed. 473, 93 C. C. A. 109, and Miller v. Margerie, by the same court, 149 Fed. 694, 79 C. C. A. 382, is necessary on the question of any fraud, accident, or mistake in the issuance of the patents to plaintiff. It was held in those cases that persons claiming the right to obtain legal title to lots in the town of Juneau are required to make application therefor to the town-site trustee; that no allegations of fact showing how or the means whereby the plaintiffs were prevented from having knowledge of the hearing before the town-site trustee, and there litigating the right of possession in lots sued for, were made, "nor was it shown that such want of knowledge or want of opportunity to be heard before said town-site trustee was induced or caused by the defendant. The court held that it was incumbent on the plaintiffs to allege facts showing that, without negligence on their part, they were prevented from appearing before the trustee." In this case there has not been sufficient or any evidence on the part of the defendant to bring him within the foregoing requirements.

As to the parcel of land described in the first cause of action in the southeast corner of lot 1, block 3, I do not find any evidence of fraud on the part of the plaintiff, let alone that clear, unequivocal, and convincing evidence of fraud which is required to set aside or vary solemn instruments, as the patents issued to the plaintiffs in this case. Maxwell Land Grant Case, 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949; United States v. American Bell Telephone Co., 167 U. S. 224, 17 Sup. Ct. 809, 42 L. Ed. 144.

In fact, the pleading of the defendant excusing himself for not knowing where the corner of this lot was until long after the erection of his building would itself tend to preclude any

imputation of fraud on the plaintiff's part in claiming the entire lot.

The regulations of the Department of the Interior June 12, 1903, regarding the town sites in Alaska, provide that the trustee "will observe and follow, as strictly as the platting of the town site will permit, the rights of all parties to the property claimed by them, as shown by the records of the clerk of the District Court of Alaska." It is the policy of this law and its administration to award the entire lot to the occupant and bring the possession and interests of the occupants of the town site into something like order, and not leave their holdings interlocked and dovetailed. Carter v. Ruddy, 166 U. S. 493, 17 Sup. Ct. 713, 41 L. Ed. 1090.

The system of surveys and disposal of all government lands, agricultural, timber, mineral, and town site, contemplates the disposition of the same in rectangular parcels, or at least with straight parallel side and end lines as more orderly, less wasteful, and most beneficial to all concerned. For this reason, if not otherwise, the trustee should have the authority to straighten a ragged, irregular boundary between occupants, even if, in so doing, such straightened boundary necessarily excluded portions of an occupant's improvements of small value.

It appears by the evidence that at the time the defendant erected the two-story frame building upon his land, which is proven to have cost upwards of $4,000, the foundation was laid to include this corner of land, and the matter was called to the attention of the agents of the owner, and the question then considered of notifying the defendant and preventing his building the same so far to the westward as to include this ground, but no such steps were taken, and plaintiff's predecessor in interest permitted the building to be completed without so doing. Under these circumstances, it appears inequitable to award this ground to the plaintiff and allow him to chop a hole in the side of a valuable building and very materially damage and disfigure it. In fact, it would not appear to be any abuse of discretion to ignore the encroachment upon

this small fraction of ground under the maxim, "De minimis non curat lex."

The order of the court will be that the plaintiff will be enjoined from entering into the possession of this ground or recovering the same from the defendant, but will be allowed 60 days within which to institute a suit for the recovery of its value and damages, if any, to the remainder of the tract, which issue may be framed in this suit and jurisdiction retained for that purpose or an independent suit, as plaintiff shall upon consideration deem advisable; such injunction to remain in effect until 60 days after execution upon any money judgment obtained in such suit shall be returned unsatisfied, and until the further order of this court.

Regarding the land in controversy in lot 3, block 3, involved in the second cause of action, as set forth in the complaint, and also in the cross-complaint, I am of the opinion that plaintiff should recover possession as prayed.

The defendant in his original answer stated that the trustee gave notice pursuant to the regulations of the Secretary of the Interior that he would on the 15th day of November, 1897, set apart lots and parcels of land in said town site to the occupants. It also was so stipulated upon the trial. On December 3, 1897, the plaintiff filed his application with the trustee for the lands embraced in lots 2 and 3 of block 3.

On January 3, 1898, the defendant filed his application for deed, defective as above set out, in that it described the land claimed by him as lying between lots 2 and 3 in block 3 instead of describing it according to the official plat.

The plaintiff did not receive the patent to lot 3 until July 20, 1898. It is therefore concluded that as long as defendant's deed and the record thereof did not disclose any occupancy or interest of his in lot 3, in so far as the government, in regulating the disposal of its lands, is concerned, the notice which it is admitted the trustee gave is sufficient. Miller v. Margerie, supra; Valentine v. McGrath, supra.

I further conclude that inasmuch as it is shown that the defendant filed his application for the lands claimed by him, as

described in the only deed he had, long prior to the patenting of any land to plaintiff, he had notice that the trustee was disposing of the lots, and that he cannot therefore complain for want of notice; that, if there was a mistake made by the trustee, he was misled thereto by the representations of the defendant himself; and that he cannot now complain on account thereof. It was a blunder on defendant's part, and in no sense a mutual mistake of his and the plaintiff. Volume 20 (2d Ed.) Am. & Eng. Ency. Law, p. 816, and citations.

That portion of lot 3 which the defendant claims to own and occupy juts into the west side of lot 3 in such an irregular manner as to destroy its uniform outline, and to a great extent the usefulness of the remainder; and I am of the opinion that the injury to the remainder of the property would be greater than the benefit to the defendant, and that the trustee was authorized, under the cases above cited and the regulations above quoted, in awarding all of lot 3 to the plaintiff, had all the facts been before the trustee.

Further it is alleged by the defendant in his original answer that the trustee did "actually hear and determine on said false and fraudulent statements the said questions of said occupancy and ownership of said lots, and, acting under the belief that said statements were true, executed to the plaintiff a trustee's deed" conveying to plaintiff lot 3 in block 3.

It was further proven and conceded that, if the trustee made any mistake, it was one of fact regarding the occupants and rights of occupancy of lot 3, and not one of law under conceded facts. This being true, the decision of the trustee is conclusive, in the absence of fraud which, as shown, has not been proven. New Dunderberg Mining Co. v. Old et al., 79 Fed. 598, 25 C. C. A. 116; King v. McAndrews, 111 Fed. 860, 50 C. C. A. 29. The cases called to my attention by counsel for the defendant are cases, not where the trustee mistakenly decided concerning occupancy, but where, under the facts, he made a mistake in the law.

Regarding the disputed area in lot 2 of block 3, the decision will be the same for the reasons which have already been given, and the additional reason that the defendant again him-

self misled the trustee regarding the extent of his occupancy by his amended application for location.

There was no evidence to show the court upon the trial that this was in any wise a mutual mistake of plaintiff and defendant, although so pleaded. It is likewise apparent that to so hold would not be inequitable, as it is shown that the defendant's original holding was only 100 feet deep from Front street, and that he has encroached to the rear until it has become 120 feet deep and now seeks to extend that.

Although the defendant by his cross-complaint has sought to invoke the equitable powers of the court and ask equity, he has at no time tendered or offered to pay the plaintiff any part of the $48 assessed by the trustee against each of lots 1 and 3 in block 3 for the administration of the trust and paid by the plaintiff.

Regarding the defense of the ten-year statute of limitations, I am of the opinion that the defendant cannot invoke this statute in this case. This is a strictly legal defense, and to allow the defendant the benefit thereof would be to allow him to collaterally attack the trustee's finding of plaintiff's occupancy at the time of the execution of the patents.

The town of Juneau was settled and these lands first occupied about ................................................ 1880
The official survey for entry of town site was made in........ 1892
The entry of town site was made in October................. 1893
The plaintiff and defendant were then occupants of these adjoining lands.
Patent was made to trustee in.............................. 1897
The plaintiff applied to trustee for disputed lands............ 1897
The defendant applied to trustee for his lands in January.... 1898
Patents were issued by trustee to plaintiff in July............. 1898
This suit was begun in April................................ 1907

The ten-year and seven-year statutes of limitations (Code of Civil Procedure) relied upon by the defendant are as follows:

"Sec. 4. Within Ten Years. The periods prescribed in section three of this act for the commencement of actions shall be as follows: Within ten years actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it shall appear that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed

4 A.R.—8

of the premises in question within ten years before the commencement of the action: Provided, in all cases where a cause of action has already accrued, and the period prescribed in this section within which an action may be brought has expired or will expire within one year from the approval of this act, an action may be brought on such cause of action within one year from the date of the approval of the act."

"Sec. 1042. Title by ·Adverse Possession. The uninterrupted adverse notorious possession of real property under color and claim of title for seven years or more shall be conclusively presumed to give title thereto except as against the United States."

It is the contention of defendant's counsel that the statute of limitations commenced to run against the plaintiff the moment his right of action accrued; that in Alaska the right of action accrued the moment ouster took place, although the record title was still in the government. To this point the following cases are cited: Wilson v. Fine (D. C.) 38 Fed. 789; Mickey v. Stratton, 5 Sawyer, 475, Fed. Cas. No. 9,530; Campbell v. Silver Bow Basin M. Co., 49 Fed. 47, 1 C. C. A. 155; Miller v. Blackett (D. C.) 47 Fed. 547; Davis v. Dennis, 43 Wash. 54, 85 Pac. 1079; Copper River Lumber Co. v. Humphreys, 2 Alaska, 39. None of these cases involved the question of the statute of limitations. They simply held that one in the peaceable and quiet possession of real property can eject and recover the same from a mere trespasser or intruder. To this point plaintiff's counsel further relies upon Missouri Valley Land Co. v. Wiese, 208 U. S. 234, 28 Sup. Ct. 294, 52 L. Ed. 466; Iowa R. R. Land Co. v. Blumer, 206 U. S. 482, 27 Sup. Ct. 769, 51 L. Ed. 1148; Eastern Oregon Land Co. v. Brosnan, 173 Fed. 67, 97 C. C. A. 382; Boe v. Arnold, 54 Or. 52, 102 Pac. 290, 20 Ann. Cas. 533.

But all of these latter cases were cases where it was held that the possession of land, although in admitted subordination to the United States from which the person in possession is seeking to obtain title, may nevertheless be adverse to every one else, and, when continued for the statutory period, may be set up in bar to an action by one claiming under a prior grant. In all of these cases there had been a prior grant in præsenti by which the adverse party had been seised of title and right of possession. The plaintiff in this case was not

seised of title under any grant from the government until the issuance of his patent.

To start the statute of limitations running against the plaintiff, he must have been disseised and, in order to be disseised, he must at some time have been seised of title, either of fee or freehold, and this he was not until the issuance to him of patent. Tyee Con. Mining Co. v. Langstedt, 136 Fed. 124, and cases cited page 126, 69 C. C. A. 548. It has been argued by counsel that this case is overruled by Eastern Oregon Land Co. v. Brosnan, supra, but I conclude, as above pointed out, that the latter decision is not sufficiently far reaching to have the effect contended for.

Counsel for defendant further contends that, even if the statute did not commence to run until the government had parted with title, this took place at the time entry was made by the town-site trustee October 13, 1893, 14 years before the commencement of this action, and counsel relies upon the authority of Ashby v. Hall, 119 U. S. 526, 7 Sup. Ct. 308, 30 L. Ed. 469. That decision was to the effect that the trustee could not dispose of an alley in the city of Helena, Mont., of which an occupant of a lot in that city had the use and benefit at the time of the entry of the town site in such manner as to deprive him of that right. The rights and interest of such occupant in the highways of the city of Helena might be a vested right before the bounds and extent of his interest in lots had been determined and title by patent thereto vested in him. The scope of that decision is shown by the following therefrom:

"These regulations [referring to the statutes of the territory] might extend to provisions for the ascertainment of the nature and extent of the occupancy of different claimants of lots, and the execution and delivery to those found to be occupants in good faith of some official recognition of title, in the nature of a conveyance. But they could not authorize any diminution of the rights of the occupants, when the extent of their occupancy was established."

It is the delay, the duration of time after title seised, that raises the bar of the statute; this may not be by relation, else one ought be barred before time seised. Such occupants would not be seised of title to any particular tract of land until the

extent of their occupancy was determined and established by the trustee, which and the date thereof is alone evidenced by the patent. The trustee is not a naked trustee for the purpose of holding title, but he is charged with the duty of officially determining questions of fact, if not of law, concerning the rights of parties in the town site, their occupancy and the extent thereof, and to require the payment of assessments in the nature of purchase money by the occupants prior to the issuance of patent. It is therefore clear that any decisions upholding the right of action on an equitable title, when nothing more remains to be done by the claimant, are not applicable.

The lands contended for in lot 2, block 3, would not be affected under this contention because of the amended application of the defendant falling short of his now claimed occupancy on the northwestern line of his holdings in that lot. The application in this shape would itself be sufficient to warrant the conclusion that his occupancy, if any, beyond that line was not adverse. Patents were not issued to the parties in this lot until after the contest in 1901.

Defendant showed no color of title to render applicable the seven-year statute of limitation. The plaintiff himself testified and attempted to qualify as an expert on the rental value of his property which the defendant had been withholding from him. This was merely opinion upon his part, and the court is not inclined to be bound by his opinion nor follow the rule by which he arrived at the rental value, as there was no other evidence on this question; he will be allowed the nominal amount of $10 for the detention of all parcels of property hereby awarded him during the time herein involved.

Plaintiff by his complaint sought to recover all of lot 2, block 3, the greater part of which was held by defendant under trustee's deed and covered with valuable improvements of the defendant, and, as the defendant by his cross-complaint seeks to recover other lands herein awarded to plaintiff, neither party will recover costs.

The decree will confirm in all things the deeds of the trustee.