MOSES MANUEL *vs.* JOSEPHINE FABYANSKI and others.

July 14, 1890.

**Public Land—Erroneous Entry—Transfer to Tract Intended.**—Section 2372, Rev. St. U. S., providing for the transfer to the tracts intended of an entry of public land, erroneous because of a mistake in the numbers or description of the tracts on the part of the person entering, authorizes a transfer to the tracts intended only if they be unsold at the date of the transfer.

**Same—Prior Purchaser of Tracts Intended—Notice.**—A purchaser of those tracts does not take charged with notice of a prior application to make the transfer, and subject to its result.

**Same.**—Certain papers and transactions in the land-office *held* not to be an application under that section to transfer the entry to the tracts involved in this action.

Appeal by plaintiff from a judgment of the district court for Ramsey county, where the action was tried by *Otis,* J., a jury being waived.

*Lusk & Bunn* and *S. & O. Kipp,* for appellant.

*Thompson & Taylor,* for respondents.

GILFILLAN, C. J.    Ejectment to recover the S. W. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$, and lots 2 and 3, of section 23, township 30, range 23.    Plaintiff claims through a patent from the United States to one Cressy, dated June 23, 1855, and defendants through a patent from the United States to one Murray, dated November 10, 1855; so that upon the patent title alone plaintiff would be entitled to recover.    But where a patent issues to one person when another is entitled to it, the legal title, it is true, vests in the former, but he takes and holds the land as trustee for the latter, who is the equitable owner of it.    As permitted by the practice in this state, the defendants in their answer set up their equitable title as against the Cressy patent by alleging facts which, if true, show that Murray was, and Cressy was not, entitled to a patent.    The facts alleged amount to this: that Murray's was the prior entry and purchase, so that the land belonged to him when the Cressy patent issued.    Murray's entry was upon a

cash purchase, and was made December 16, 1854. There is no
question that it was in all respects regular and valid if there had
been no prior entry. Plaintiff claims that Cressy had made an en-
try and purchase which took precedence of Murray's. And this
presents the question in the case.

The facts in respect to the Cressy entry, stating them as nearly as
may be in chronological order, are: April 19, 1851, one St. Martin
filed in the United States land-office for the district in which the lands
lay his declaratory statement for a pre-emption claim upon the N. E.
$\frac{1}{4}$ of the S. W. $\frac{1}{4}$, and lots 3 and 4, of section 23, township 30, range
23. It will be seen that as to lot 3 the land is identical with that
here involved. In March, 1852, Cressy assumed to have purchased
St. Martin's pre-emption right, and on the 23d of that month he filed
in the land-office an application, dated that day, to locate military
land-warrant No. 73,823 in purchase of land described in the appli-
cation as the S. W. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$, and lots 2 and 3, in section
23, township 30, range 22. This differs from the land in controversy
only in respect to the range, one being in 22, and the other in 23;
and it differs entirely from St. Martin's pre-emption claim, though it
is probable that Cressy intended by his entry to secure that claim.
The application was regular in form, had indorsed on it the required
affidavit, also describing the land as in the application, was received,
approved, and certified by the receiver and register of the land-office,
and a receipt for the land-warrant and duplicate certificates of the
entry, dated the same day, issued, one of which duplicates was de-
livered to Cressy. In the certificates the land was described as in
the application, and proper entries were made in the land-office plat
and tract book, showing the entry of that land by that warrant. The
land-officers had nothing to do with preparing the application or affi-
davit, but they were wholly prepared by an agent or attorney of
Cressy; so if there were any error it was his error, and not that of
any land-officer. On May 1, 1853, there was found in a drawer in
the land-office what purported to be a written application by Cressy,
dated March 26, 1852, to locate the same warrant on the land here
in controversy. No approval by the land-officers nor any affidavit
appears on this application. There is nothing to indicate how or

when, between March 26, 1852, and May 1, 1853, this paper came to the land-office,—whether before or after the papers on the first application had been transmitted to the general land-office; nor is there anything in the records of the local land-office to show that the local officers took any action in regard to it until February 23, 1854, when the register transmitted it to the general office, expressing the opinion that "it may have been preserved till now under the presumption that it might be needed as corroborative evidence in the case to which it refers." February 20, 1854, Cressy made an affidavit, in which he states that in March, 1852, he did sign location papers locating warrant No. 73,823 upon "S. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$, and lots 2 and 3, sec. 23, T. 30, range 23, to cover Sevier St. Martin's claim," and that he expressly directed the register to make the location in range 23. This his agent sent to the local land-office with his own certificate that certain papers also sent by him to the land-office were a copy of the duplicate issued to Cressy and a copy of a letter from the register to Cressy. He also certified that the location was intended to embrace the St. Martin claim. As to the copy duplicate, this certificate, as will appear hereafter, was false, and the original letter was not sent to the land-office, though the agent claimed to have it at the time. The agent sent with these papers a letter asking that they be sent to the department, "so that Cressy may get the land he located long ago, and which has not yet been patented, owing to some errors, though not of Mr. Cressy's committing." These papers were forwarded by the register to the general land-office, with a letter stating that he had no doubt Cressy intended to locate in range 23, but that the books of the local office showed that the location was in range 22, and inquiring where the books of the general land-office placed the location. On this letter was indorsed by the general land-office, under date of March 10, 1854, "Proper entries made on register. No answer required." On October 17, 1854, the commissioner of the land-office wrote Cressy, purporting to be in answer to a letter of inquiry by Cressy of September 25th, informing him that his land-warrant appeared to have been located on range 22 instead of range 23. In May, 1855, Cressy made an application, by his own affidavit, supported by the affidavit of the agent who had all through acted for

him, asking the department to allow him the land (the St. Martin's claim) which he directed the register to locate the warrant upon, or the location in range 22 (there appears to have been a question as to the right to make that location.)  By the affidavit of the agent it appears that the duplicate certificate of entry issued described the land as in range 22, but that after its issue he (the agent) altered it by changing 22 to 23, which he says he was authorized to do by letter from the register of the local land-office, though he did not produce the letter.  June 23, 1855, the commissioner of the land-office changed the location of Cressy's warrant from range 22 to range 23.  It does not appear that Murray had any notice of any of the transactions with respect to the Cressy entry.  The effect of the action of the commissioner of June 23, 1855, if valid, was to unseat the location which Murray had made in December, 1854.

The plaintiff claims that the action of the commissioner was with jurisdiction, and conclusive.  The authority of the land-department to correct clerical errors and mistakes of officers of the department, so long as the rights of only the government and any one seeking such correction are to be affected by it, may be conceded.  But it cannot make any decision to displace the rights of others not parties to, and who have no opportunity to be heard in, the proceeding in which the decision is made.  To avoid this self-evident proposition, the plaintiff contends that at the time when Murray made his entry there was pending before the department an application by Cressy to correct his location, so that instead of resting on range 22 it should be transferred to range 23, so as to cover the tracts which Murray entered, or rather to correct the description in his application on which the location was made; that Murray purchased *pending the litigation;* that he was charged with notice as a purchaser *pendente lite*, and so, although he had no actual notice, he would be bound by the result of the application.

Upon the facts in the case there can be no pretext that the land-officers were in fault in Cressy's original location.  If by any error or mistake the entry was of a tract other than that which he intended to enter, the error was his, for the entry was of the precise tracts described in his application and the accompanying affidavit.  If there

was any mistake in the numbers or descriptions of the tracts intended, he alone was responsible. In such case the parties' only remedy is that pointed out by section 2372, Rev. St. U. S. Upon an application made as therein prescribed, the commissioner of the general land-office, "if entirely satisfied that the mistake has been made, and that every reasonable precaution and exertion had been made to avoid it, shall be authorized to change the entry and transfer the payment from the tract erroneously entered to that intended to be entered, *if unsold;* but, if sold, to any other tract liable to entry;" provided, also, that nothing herein contained shall "affect the rights of third persons." We understand the words "unsold" and "if sold" and the "rights of third persons" to refer, as do the words "any other tract liable to entry," to the time of the transfer, and not to the time of making the application. We are not cited to any decision of the United States supreme court on the point. If we are right in this, the land in controversy passed upon Murray's entry beyond the power of the commissioner to transfer Cressy's entry to it, even if there was a proper application for the transfer, and no matter when it was made. But, supposing an application such as the statute prescribes prior to Murray's entry, it was in no respect a "litigation pending," so that a purchaser of the land would stand as a purchaser *pendente lite.* A litigation pending involves contested rights, conflicting claims. But an applicant under this statute asserts no right; he has none to assert. He seeks a favor,—a matter of grace. However his application may be determined, even if the commissioner should refuse to entertain it, he has no remedy.

But the ground upon which the court below seems to have decided the case is that when Murray made his entry there was no application of Cressy to transfer his entry to the land here in controversy. There was certainly no formal application. Up to that time the department was not asked to make the transfer. As shown by his letter to Cressy of October 17, 1854, the commissioner did not consider that he was called on to determine whether a case was made, as there certainly was not, under the statute, or that Cressy at that time desired anything more than to be informed what his rights upon the location made by him were. And it is to be noted that even

in the application of May, 1855, the only one that has the appearance of being made under the statute, he does not ask to have his entry transferred to the land here in controversy, but to the St. Martin claim, "so as above quitclaimed to him," as his affidavit states, or that he be allowed to retain his location in range 22. The St. Martin claim, as we have seen, embraced only one of the subdivisions entered by Murray, and that one, as it seems, was not subject to entry by an assignee of a land-warrant such as Cressy's, and embraced two subdivisions not included in Murray's entry. How, upon the application, the commissioner came to give Cressy what he did not ask for does not appear.

We do not see how anything done prior to Murray's entry could be regarded by any one as an application by Cressy to have his entry transferred to the land entered by Murray.

Judgment affirmed.