## LE MARCHAL v. TEGARDEN.

(Circuit Court of Appeals, Eighth Circuit. November 29, 1909.)

No. 2,756.

1. PUBLIC LANDS (§ 127*)—RIGHTS ACQUIRED BY ENTRY—PATENT AS NOTICE OF DESCRIPTION.

A cash entryman of a tract of public land who received a register's certificate which he forwarded, and on which a patent was issued and recorded in the General Land Office, is constructively, at least, charged with knowledge of the description therein.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 127.*]

2. PUBLIC LANDS (§ 108*)—PROCEEDINGS IN LAND OFFICE—CONCLUSIVENESS OF DECISIONS.

The decision of the Secretary of the Interior on an appeal to him in a controversy over a land entry is conclusive as to questions of fact, in the absence of fraud or gross mistake, but not upon questions of law, and, if through an error of law he directed a patent to issue to the wrongful claimant, the patentee will be held in equity as a trustee for the rightful owner.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 304–306; Dec. Dig. § 108.*]

3. PUBLIC LANDS (§ 127*)—MISTAKE IN ENTRY—PROCEEDINGS FOR TRANSFER.

An application for a change of entry of public land on the ground of a mistake in the description of the land is necessarily governed by Rev. St. § 2372 (U. S. Comp. St. 1901, p. 1451), which is the only statute applicable, in whatever form it may be presented, and under said section the entry can only be transferred to a tract which is "unsold," and where it will not affect the right of third persons, and a decision of the Secretary of the Interior transferring such an entry to a tract upon which a homestead

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

entry had subsequently been made in good faith by another who had made valuable improvements, completed his residence, made final proof, and received his final certificate, which vested in him the equitable title, is wholly unauthorized and erroneous in law.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 127.*]

**4.** PUBLIC LANDS (§ 103*)—PROCEEDINGS IN LAND OFFICE—CONTESTS—ESTOP-PEL.

In a contest before the Land Department between a patentee who sought to have his patent transferred to a different tract on the ground that such tract was intended and that the wrong numbers were inserted in the patent through mistake, and a homestead entryman of the tract claimed, the fact that the latter contested the question of fact as to the mistake did not estop him to also deny the applicant's right to the transfer as a matter of law in case the question of fact was determined against him.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 103.*]

**5.** PUBLIC LANDS (§ 127*)—CHANGE OF ENTRY—SCOPE OF STATUTE.

Rev. St. § 2372 (U. S. Comp. St. 1901, p. 1451), which provides that "in all cases of an entry hereafter made of a tract of land not intended to be entered, by a mistake of the true numbers of the tract intended to be entered," the entry may be transferred to the tract intended if unsold, and, if the rights of no third person will be affected, applies to cases where the patent has been issued as well as to those in which the legal title has not been transferred, in view of the fact that the provision of the original act of May 24, 1824 (chapter 138, 4 Stat. 31), which limited its application to cases where no patent had issued, was omitted from the Revised Statutes.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 127.*]

**6.** TAXATION (§ 734*)—VALIDITY OF TAX TITLE—LAND NOT SUBJECT TO TAX.

A tax sale of land, the legal title to which remained in the United States, and to which the person in whose name it was assessed did not have even the equitable title, conveyed no title or right to the purchaser.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 734.*]

Appeal from the Circuit Court of the United States for the Western District of Arkansas.

Suit in equity by E. F. Le Marchal against Grant Tegarden. Decree for defendant (152 Fed. 662), and plaintiff appeals. Reversed.

J. H. Hornsby, for appellant.

Seawell & Seawell and J. W. Story, for appellee.

Before HOOK and ADAMS, Circuit Judges, and CARLAND, District Judge.

ADAMS, Circuit Judge. This was a bill in equity brought by Le Marchal against Tegarden to declare a trust in and secure a conveyance to him of a certain tract of land to which the latter had acquired legal title. The Circuit Court dismissed the bill, and complainant brought the case here by appeal.

In December, 1893, Le Marchal relying, not only upon the fact that the public land records disclosed that the S. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of section 11, township 17 N., range 15 W., in Marion county, Ark., was vacant public land, and as such subject to entry, but also relying upon a letter from the Commissioner of the General Land Office, written in answer to his special inquiry, to the same effect, made a homestead entry upon it. He soon afterwards began to improve it, and ex-

pended about $2,500 in clearing the land, constructing a residence and outbuildings, and planting orchards and vines thereon. In January, 1894, he commenced living there with his family, and has continued to do so until the present time. In March, 1899, after the requisite five years had elapsed, he made final proof of his residence and cultivation, paid all the fees required by law to be paid, and thereby presumptively became the equitable owner of the land and entitled to a patent therefor. In April, 1901, before Le Marchal received his patent Tegarden presented to the register and receiver of the local land office in Arkansas an application in the name of the heirs of William Goodall, whose rights he had acquired by assignment, for a change of a certain cash entry made by Goodall in 1848 so as to make it cover the homestead entry of Le Marchal, and this was forwarded to the Commissioner of the General Land Office at Washington for his action. The application contained averments to the effect that Goodall in November, 1848, purchased and paid for what he supposed was the S. E. ¼ of the N. W. ¼ of section 11, township "17" N., range 15 W.; that when he paid for it he took a receiver's receipt for the money, in which the land was correctly described as located in township 17, but that the patent certificate, issued to him on the same day by the register incorrectly described the land locating it in township "16" instead of "17"; that this certificate was forwarded to the Commissioner of the General Land Office in Washington, upon which, on July 1, 1850, a patent was issued to Goodall, conveying to him the land in township "16" as described in the certificate instead of in township "17" as it should have done. Notice of the hearing of this application was given to Le Marchal, and he appeared before the Commissioner who heard the evidence produced by both parties, and on May 3, 1902, decided against Tegarden and in favor of Le Marchal, the present complainant. Afterwards an appeal was prosecuted to the Secretary of the Interior, who, on January 21, 1903, reversed the decision of the Commissioner, and ordered the patent which had issued to Goodall for the tract in township 16 to be canceled, and a patent for the land in controversy in township 17 to be issued to the Goodall heirs. Afterwards a patent was duly issued, conveying the land entered by Le Marchal to him, not including however, the 40-acre tract now in dispute. Upon this tract his residence had been built and practically all his improvements had been made. Much evidence was heard by the officers of the Land Department on the issue joined whether the original entry of Goodall was intended to be upon the land in controversy or elsewhere, and the same and other like evidence was heard at the trial in the court below and is now before us on appeal.

There is proof, and to our minds quite conclusive, that Goodall never intended to enter the tract in controversy, but did intend to enter the "N. E." ¼ instead of the "S. E." ¼. It was, we think, upon this northeast 40-acre tract that the mill site which Goodall confessedly desired to acquire was situated. There is also much evidence tending to estop those under whom Tegarden claims as well as Tegarden himself from asserting his legal title against Le Marchal's equitable right.

The evidence may be summarized as follows: The register's certificate delivered to Goodall was an instrument of a high order of im-

portance. Upon it and it alone could a patent be issued, and even before its issue the certificate conferred upon him an equitable title to the land described in it. Carroll v, Safford, 3 How. 441, 11 L. Ed. 671. Goodall deliberately, and we must presume intelligently, accepted this important document which did not describe or concern the tract of land which it is now claimed he intended to enter, but a totally different one, and caused it to be forwarded to Washington and thereafter received a patent for the land as described in it. This patent was recorded in the General Land Office, and that being in law delivery to the patentee (United States v. Schurz, 102 U. S. 378, 26 L. Ed. 167) bound him and all claiming under him constructively, at least, to a knowledge of its contents.

Goodall died in 1850, two years after he made his cash entry, without ever occupying the land. His mill was built on the "N. E." ¼ and not on the "S. E." ¼ and none of his heirs made a claim to the land for 50 years thereafter; and then not until Le Marchal had made his homestead entry, had occupied and cultivated the land for more than 5 years, and at a large expense had established a home for himself and his family thereon. Even then Goodall's heirs asserted no claim. The proof satisfies us that they, ignorant of any real claim in themselves, were tricked into assigning their legal right to Tegarden who was a land speculator living in the region where the land in controversy was situated. The circumstances tend strongly to show that Tegarden must have known, at and before the time he took steps to acquire their legal right, of the work, labor, and expenditures which had been and were then being put upon the premises by Le Marchal. Whether Goodall originally intended to make his cash entry upon the tract in controversy is immaterial except in so far as it throws light upon other phases of the case. That was a question of fact before the Land Department in a controversy between those claiming under him and Le Marchal, and the final decision of the Secretary of the Interior upon the appeal to him, if there was no fraud or gross mistake of fact, is conclusive upon us. James v. Germania Iron Co., 46 C. C. A. 476, 107 Fed. 597; Whitcomb v. White, 214 U. S. 15, 29 Sup. Ct. 599, 53 L. Ed. 889, and cases cited. But if the officers of the Land Department upon the facts found, conceded or established without dispute, misapplied the law, and, as a result, issued a patent to the wrongful claimant, the patentee will be held in equity as a trustee for the rightful owner. Cases supra. And whatever we may think of the evidence tending to create an estoppel against the defendant we are indisposed to base our decision of this case upon that doctrine. We find a more satisfactory ground upon which to put it.

The defendant intrenches himself behind the decision of the Secretary of the Interior and claims, as his main defense, that that decision affords an insurmountable obstacle to the relief sought by complainant. If that defense is not sustained there is little if anything left to defeat complainant's recovery. It cannot be sustained if it resulted from a misconception of the applicatory law; in other words it cannot be sustained if it unlawfully deprived complainant of vested rights and awarded defendant a remedy unauthorized by law and unwarranted by the undisputed facts of the case. In reaching a conclusion

on this question we must consider the meaning of certain statutory provisions and the character of the proceedings taken before the Land Department.

Section 2372, Rev. St. 1878 (U. S. Comp. St. 1901, p. 1451), is as follows:

"In all cases of an entry hereafter made, of a tract of land not intended to be entered, by a mistake of the true numbers of the tract intended to be entered, where, the tract, thus erroneously entered, does not, in quantity, exceed one-half section, and where the certificate of the original purchaser has not been assigned, or his right in any way transferred, the purchaser, or, in case of his death, the legal representatives, not being assignees or transferees, may, in any case coming within the provisions of this section, file his own affidavit, with such additional evidence as can be procured, showing the mistake of the numbers of the tract intended to be entered, and that every reasonable precaution and exertion had been used to avoid the error, with the register and receiver of the land district within which such tract of land is situated, who shall transmit the evidence submitted to them in each case, together with their written opinion, both as to the existence of the mistake and the credibility of each person testifying thereto. to the Commissioner of the General Land Office, who, if he be entirely satisfied that the mistake has been made, and that every reasonable precaution and exertion had been made to avoid it, is authorized to change the entry, and transfer the payment from the tract erroneously entered, to that intended to be entered, if unsold; but, if sold, to any other tract liable to entry; but the oath of the person interested shall in no case be deemed sufficient, in the absence of other corroborating testimony, to authorize any such change of entry; nor shall anything herein contained affect the right of third persons."

Defendant in his original proceeding before the Land Department unquestionably invoked the remedy provided by the foregoing section. The application presented to the register of the local land office was styled "Application for Change of Entry." This application, with the evidence which had been submitted to them, was afterwards transmitted by the register and receiver to the Commissioner of the General Land Office with their written opinion upon its merits.

Correspondence ensued between the Commissioner and Mr. Estes, the attorney of defendant, which plainly indicates that the remedy prescribed by this statute had been intentionally invoked. In one of the Commissioner's letters to Estes he said:

"A change of the entry can only be made in accordance with the provisions of the circular of August 8, 1878"

—a copy of which was inclosed.

That circular was addressed to registers and receivers of United States Land Offices and reads in part as follows:

"In order to secure uniformity in proceedings upon applications for change of entry attention is called to the following sections of the Revised Statutes and accompanying instructions."

Then follow sections 2369, 2370, 2371, and 2372, which are set out in full in the circular and carefully explained.

Among the instructions appears the following:

"A change of entry. when allowed, will be made from the tract erroneously entered to that intended to have been entered. if vacant; but, if not vacant, the change may be made to any other tract liable to entry."

From the beginning to the end of the proceedings before the Commissioner the provisions of section 2372 seem to have guided the parties. The avowed purpose was to secure a change of a mistaken entry. But some time during the pendency of this application Tegarden claims to have transformed his proceeding into what he calls an application "to cancel or correct" the Goodall patent; but, whatever he called it, his right was based upon the contention that there "was a mistake of the true numbers of the tract intended to be entered." His remedy was what Congress had provided in case of such a mistake; and this was subject to all the conditions which Congress saw fit to impose upon it. The change in the name of the application did not change its substance. Neither in our opinion did it change the remedy. It is also true that Tegarden proceeded in the names of the "heirs" of Goodall instead of in the names of his "legal representatives"; but the latter words when found in statutes are frequently construed to mean "heirs" if the subject-matter of the legislation so requires. Inasmuch as land does not descend to "legal representatives," and as the latter ordinarily have no interest in it except as an ultimate recourse for the payment of debts, it must be held that Congress employed the words not in their technical sense as executors or administrators, but in the broader sense as successors to the estate of the ancestor; and accordingly that defendant's application in the names of the "heirs" of Goodall fell well within the obvious meaning of the section. Duncan v. Walker, 2 Dall. 205, 1 L. Ed. 350; Wear v. Bryant, 5 Mo. 147, 164; Alford v. Consolidated F. & M. Ins. Co., 88 Minn. 478, 93 N. W. 517; Bowman v. Long, 89 Ill. 19, 21.

On May 3, 1902, after a full hearing of the claims of both parties the Commissioner rendered a decision adverse to defendant and put it exclusively upon the ground that Le Marchal's homestead entry had segregated from the public domain the tract in question, and that in view of the provisions of section 2372 there was no authority of law for so correcting the Goodall cash entry as to deprive Le Marchal of his homestead right. The Secretary of the Interior in reversing this ·decision ignored the question of law upon which the Commissioner acted, and disposed of the case as if it was not involved. Did he thereby commit an error of law which vitiated his judgment? By section 2372 the right is conferred to secure a change of entry from the tract "erroneously entered to that intended to be entered." Giving that conclusive effect to the findings of the Land Department which we are required to give, the 40-acre tract in controversy, and not the 40-acre tract north of it, was the one intended to be entered by Goodall. That was what Tegarden undertook to prove, and what he succeeded in establishing to the satisfaction of the Secretary of the Interior.

Accordingly, we shall assume from now on that when Goodall went to the local land office in 1848 he intended to make a cash entry of the tract in controversy; yet we do not see how the fact that Le Marchal endeavored to prove that Goodall intended to enter the 40-acre tract north of this and failed in so doing estops the former (as held by the court below, 152 Fed. 662, 668) from taking advantage of the legal consequence of what was claimed by Tegarden, and what was found

to be true by the Secretary, namely, that Goodall's actual entry of a tract in township 16 was a mistake and that it should have been for a like tract in township 17. Le Marchal had two strings to his bow. His first was an issue of fact, and his second an issue of law. If he had succeeded in establishing the fact, as he claimed, that Goodall never intended to make his entry upon the tract in dispute the question of law would not have arisen; but having failed in that respect we perceive no reason why he may not avail himself of his legal rights based upon the facts as ultimately found to be true. If the heirs of Goodall had no right to secure the correction of his entry so as to appropriate Le Marchal's homestead we perceive no reason why the latter may not invoke the nonexistence of that right in aid of the enforcement of his own rights. And this is exactly what he tried to do. His amended bill although somewhat general in its charges, which, however, were not excepted to for that reason, predicated his equitable right upon the proposition, among others, that the Secretary of the Interior in his ruling had made a mistake of law whereby he was deprived of his vested right and equitable ownership in the land in question, and that the Secretary thereby had exceeded his jurisdiction.

If by reason of Le Marchal's homestead entry upon the tract in controversy section 2372 presented a legal obstacle to the change of entry allowed by the Secretary of the Interior, it was an error of law on the part of that functionary to allow it. The section afforded no warrant for transferring the entry to the tract intended to be entered, unless that tract was unsold—that is (according to the very reasonable construction put upon it by the Land Department) unless it was vacant land; and by its terms it afforded no such warrant if thereby the rights of third parties were affected. It requires no argument to show that Le Marchal's perfected homstead entry had appropriated the land in question and had segregated it from the public domain. It was no longer vacant, and could not be substituted for Goodall's mistaken entry without affecting rights of a third party, who, we have already stated and shall hereafter demonstrate, had acquired his rights innocently and without any knowledge of the Goodall claim. But, independently of the fact that the provisions of that section were invoked by Tegarden, we think it is applicable and controlling of the merits of this case. They announce a great public policy to be observed in the disposition of public land, and this policy surely cannot be thwarted by the name given to the proceeding by which it is invoked. The great principle announced was that the Land Department might correct an entry made by mistake by transferring it to the tract intended to be entered, provided the latter was vacant and provided the rights of third parties should not be affected thereby.

A clear case of "an entry made by a mistake of the true r umbers of the tract intended to be entered" is here involved. Presumptively this mistake originated in the first step taken by Goodall in making his entry, namely, in his application to purchase. This application was destroyed by a fire and is not before us, but the law (section 2355, Rev. St. [U. S. Comp. St. 1901, p. 1443]) required the applicant to describe in a written application the tract he desired to enter

"by the proper number of the section * * * and of the township and range." Upon this application, according to the established practice of the Land Department, the register is required to act in issuing the patent certificate, and presumably he performed his legal duty and issued the certificate in exact conformity to the description of the land given in the application. The mistake next manifested itself in the patent certificate where the tract entered was described as being in township 16. It next appeared in the patent which was issued by the Land Department. All these mistakes were in the number of the township in which the tract intended to be entered was located. The fact that the receiver's receipt for the money paid by Goodall described the land as in township 17 is of no legal significance. The receipt is of inferior dignity to the patent certificate, and any discrepancy between them should be treated as a clerical error in the former. But however the mistake originated, it was clearly one "of the true numbers of the tract intended to be entered" and was remediable by the provisions of section 2372. That section has been construed by the General Land Office for over 30 years as an extension of the provisions of the preceding sections 2369 and 2370, and as affording a remedy for mistakes in entries. In its rules and regulations governing "changes of entry" originally promulgated in 1878, and found in a circular issued in 1904 ("Circular from the General Land Office showing the manner of proceeding to obtain title to public lands under the homestead, desert land, and other laws," p. 106), it is said:

"It will be observed that section 2369 is intended to afford relief to purchasers of public lands at private sale whose errors in entry have been occasioned by the original incorrect marking by the surveyors, or by the subsequent change or obliteration of those marks, or by any other error originating with the surveyor or the land officers. Section 2370 extends the foregoing provision to cases where patents have been or may be issued. * * * Section 2372 further extending these provisions applies to all classes of entries. * * *"

This last-mentioned section thus appears to have been intended as a climax of remedies covering all cases of entries based on mistakes of anybody in the numbers of the tract intended to be entered, with some exceptions or limitations unnecessary to be referred to.

The Land Department has frequently applied the provisions of section 2372 as well as those of section 2369 to cases like the present. Sederquist v. Ayers, 2 Land Dec. Dep. Int. 575; A. J. Slootskey, 6 Land Dec. Dep. Int. 505; James Steel, 6 Land Dec. Dep. Int. 685; Richard Gill, 8 Land Dec. Dep. Int. 303; Cawood v. Dumas, 22 Land Dec. Dep. Int. 585; B. F. Bynum, 23 Land Dec. Dep. Int. 389; Stonewall J. Martin, 27 Land Dec. Dep. Int. 71; and by its instructions to local land officers has interpreted them as applicable to such cases. These decisions and working instructions, while not binding upon the courts, are entitled to great respect and ought not to be overruled without cogent reasons. Hastings, etc., Railroad Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 363; United States v. Moore, 95 U. S. 760, 24 L. Ed. 588.

The Supreme Court in Widdicombe v. Childers, 124 U. S. 400, 8 Sup. Ct. 517, 31 L. Ed. 427, takes occasion to say that section 2372

authorizes relief similar to that afforded by the preceding sections; and the Court of Appeals for the Seventh Circuit in Godkin v. Cohn, 25 C. C. A. 557, 80 Fed. 458, and the Supreme Court of Minnesota in Manuel v. Fabyanski, 44 Minn. 71, 46 N. W. 208, have applied its provisions to cases not unlike the one now before us.

It is suggested that the provisions of section 2372 are inapplicable to this case because a patent had once been issued to Goodall for the erroneous entry; but we think this fact is immaterial. The provision is couched in comprehensive and unlimited terms, fully covers all possible cases, and presumably means what it says. Its language is:

"In all cases of an entry hereafter made," the Commissioner "is authorized to change the entry, and transfer the payment," etc.

This becomes more plainly apparent when the history of the enactment is considered. It originally formed a part of the act of May 24, 1824 (chapter 138, 4 Stat. 31). As then enacted it was limited in its application to cases where no patent had been issued for the erroneous entry. But the Revision of 1878 studiously omitted that limitation, and left the statute to apply to all entries of land. The Revision struck out the fore part of the original act entirely, and eliminated from what remained all reference to the requirement that no patent should have issued for the erroneous entry.

Section 5596 of the Revised Statutes (U. S. Comp. St. 1901, p. 3750) relating to the Revision of 1878 is as follows:

"All acts of Congress passed prior to said first day of December one thousand eight hundred and seventy-three, any portion of which is embraced in any section of said Revision are hereby repealed and the section applicable thereto shall be in force in lieu thereof; all parts of such acts not contained in such Revision, having been repealed or superseded by subsequent acts, or not being general and permanent in their nature."

The language of the act just quoted is somewhat confused and indicates some carelessness in arrangement; but the section has been repeatedly construed, and its true import and meaning declared to be that if any portion of a particular act is embraced in any section of the Revised Statutes any parts of the same act not contained in the Revision must have been either repealed or superseded by other acts, or were not general or permanent in their nature. Waters v. Campbell, 4 Saw. 121, Fed. Cas. No. 17,264; In re Stupp, 12 Blatchf. 501, Fed. Cas. No. 13,563, United States v. Claflin, 14 Blatchf. 55, Fed. Cas. No. 14,799; United States v. Le Bris, 121 U. S. 278, 7 Sup. Ct. 894, 30 L. Ed. 946.

Inasmuch, therefore, as the act of 1824 originally excluded from its remedial operation cases where patents had issued, and as the revision in section 2372 eliminated the part making exception of such cases, it most obviously repealed the part so eliminated, and intentionally left it as it now stands, general and comprehensive covering all cases of mistaken entries, whether patents may or may not have issued.

Reference to original statutes frequently affords material aid in determining the meaning of their provisions when carried forward into the Revised Statutes, and they may be referred to for that purpose. United States v. Le Bris, supra. See, also, United States v.

Bowen, 100 U. S. 508, 518, 25 L. Ed. 631; Cambria Iron Co. v. Ashburn, 118 U. S. 54, 6 Sup. Ct. 929, 30 L. Ed. 60; Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429; United States v. Lacher, 134 U. S. 624, 10 Sup. Ct. 625, 33 L. Ed. 1080; The Conqueror, 166 U. S. 110, 122, 17 Sup. Ct. 510, 41 L. Ed. 937; Barrett v. United States, 169 U. S. 218, 227, 18 Sup. Ct. 327, 42 L. Ed. 723. Before closing this phase of the case we deem it appropriate to notice more particularly the contention that Le Marchal made his homestead entry with knowledge of the claims of Goodall's heirs. The proof in our opinion warrants no such contention. Le Marchal's correspondence with the Commissioner of the General Land Office is claimed to disclose such knowledge. But this is incorrect. Le Marchal's information derivable from the records of the local land office was untrustworthy and confusing. He may be constructively presumed to have known that the receiver's receipt and the tract book indicated that Goodall's entry was on the S. E. ¼ in question; but he also should be credited with knowing that the patent certificate and the patent, best evidences of the truth, indicated to the contrary, and located Goodall's entry in another township. Not only so, but the land displayed no evidence of cultivation or use, and therefore carried no warning to him.

Some other facts presumably known by him apparently tended to confuse him. The plat book in the local land office showed that the S. W. ¼ instead of the S. E. ¼ had been entered by Goodall. Moreover, Le Marchal heard, pending his consideration of the question whether he should settle on the tract, that one Boyd claimed to have cash-entered it in 1879 and these facts were sufficient to suggest an investigation on his part before he expended his time and money in establishing a homestead. Accordingly correspondence followed with the Land Commissioner in which the facts were considered, resulting in the assurance twice told by the Commissioner, that the S. E. ¼ in question was in fact just as the record disclosed—vacant public lands. We discover nothing in this to cast even a shade of suspicion upon the good faith of the homestead entry. It suggests only that reasonable caution which should attend the consideration and determination of important affairs.

The result is that the decision of the Secretary of the Interior authorizing the transfer of the mistaken entry to the homestead tract was in violation of the plain provisions of the law governing the matter, and therefore presents no obstacle to the relief sought by the bill. That decision was the defendant's main reliance and without it he has no defense.

The United States stood pledged by the statutes we have been considering to protect a homestead entry made in good faith against appropriation to correct any prior mistaken entry. Such had been declared to be a wise public policy and independent of the presumption attending the decision of the Secretary of the Interior, no one, we believe, would have had the hardihood to deny complainant's equity as against the defendant.

The next and only remaining question is whether the defendant Tegarden is protected by a tax deed upon which he relied. The land

in question was assessed for taxation in the name of William Goodall and was nominally forfeited to the state of Arkansas for the non-payment of taxes for the years 1896 and 1897. In 1901 the defendant availed himself of the privileges of section 4243 et seq. Mansfield's Digest, and made his application to purchase the land from the state. He paid $50 and secured a tax deed. This in our opinion does not aid him. Until the legal or equitable title to public land has passed out of the United States it remains subject to the control of the government and is beyond the power of the state to tax. Hussman v. Durham, 165 U. S. 144, 17 Sup. Ct. 253, 41 L. Ed. 664. It must be conceded that Goodall never got the legal title to the tract in controversy. He received a patent, but not for that tract. It is furthermore true that neither he nor his heirs ever acquired any equitable title to it; neither of them ever received a patent certificate for it, and, apart from the judgment of the Secretary of the Interior which we hold to be void and of no effect, neither of them ever had any equitable right whatever to it. If an equitable right to a tract intended to be entered, but which was not in fact entered, can prevail as against the United States, until the entry is duly corrected (which we find no occasion to decide), Goodall's equitable right would attach to the "N. E." ¼ (and not to the "S. E." ¼), that being the tract, as we have already stated, upon which he actually intended to make his entry.

The decree of the Circuit Court must be reversed and the cause remanded, with instructions to enter a decree for the complainant as specifically prayed for in his last amended bill filed June 8, 1905, and in harmony with the views here expressed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes