### SHENK et ux. v. AUMILLER et ux.

(District Court, W. D. Washington, N. D. November 10, 1914.)

### No. 36.

PUBLIC LANDS (§ 29*)—CONSTRUCTION OF ACT LIMITING ENTRIES—TIMBER AND STONE ENTRIES—"AGRICULTURAL LANDS."

By Sundry Civil Appropriation Act Aug. 30, 1890, c. 837, § 1, 26 Stat. 391 (Comp. St. 1913, § 4558), it was provided that no person who should thereafter enter upon any of the public lands, with a view of occupation, entry, or settlement "under any of the land laws, shall be permitted to acquire title to more than 320 acres in the aggregate under all of said laws." This was followed by the provision of Act March 3, 1891, c. 561, § 17, 26 Stat. 1101 (Comp. St. 1913, § 4559), that the former act should "be construed to include in the maximum amount of land, the title to which is permitted to be acquired by one person, only agricultural lands, and not to include lands entered or sought to be entered under mineral land laws." *Held*, that in view of the manifest purpose of Congress, as disclosed in the former act, to change its previous liberal policy with respect to land entries, owing to the increase of population and the rapid decrease in the quantity of public lands open to settlement, and its purpose to adhere to its long-settled policy of encouraging mineral exploration, as shown by the later act, the term "agricultural lands" was used in the latter in contradistinction to mineral lands, and it was intended to leave all other classes of lands subject to entry, including stone and timber lands, subject to the 320-acre limitation.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 41–47; Dec. Dig. § 29.*

For other definitions, see Words and Phrases, Second Series, Agricultural Lands.]

In Equity. Suit by William W. Shenk and Charlotte M. Shenk, his wife, against William J. Aumiller and Jane Doe Aumiller, his wife. On motion to dismiss. Motion sustained.

France & Helsell, of Seattle, Wash., for complainants.
P. V. Davis, of Seattle, Wash., for defendants.

NETERER, District Judge. This is a bill in equity in which complainants seek to have title to lands quieted, and have the defendants declared trustees of the title to said lands for the complainants, and a decree directing conveyance to complainants, and for general relief, alleging in substance: That on September 22, 1906, John W. Shenk

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

paid the sum of $400, being $2.50 per acre, to the United States land office, and received a receipt for the money, and final certificate for the land entered under Act June 3, 1878, c. 151, 20 Stat. 89 (Comp. St. 1913, § 4671). That said Shenk conveyed to complainants all his right, title, and interest in and to such land, after issuance of such final receipt. That thereafter a contest was initiated against the entry of John W. Shenk, and upon the hearing thereof it was stipulated and admitted that at the date of making final proof, to wit, September 22, 1906, John W. Shenk had exercised his right to acquire 320 acres of land under the desert land laws of the United States. The Secretary of the Interior held said entry for cancellation upon the sole ground that John W. Shenk was disqualified to acquire timber land under the act of June 3, 1878, supra, because he had exercised his right to acquire 320 acres of agricultural land under the desert land laws. That said entry was canceled under a construction of the act of August 30, 1890, as amended by the act of March 3, 1891. That subsequently the Department of the Interior issued a patent to said land to the defendant upon an application to purchase under said act of June 3, 1878.

Under the various land acts in force prior to August 30, 1890, a person otherwise qualified could enter 1,440 acres of public lands, under the following acts: Timber Culture Act March 3, 1874, amended by Act June 14, 1878, c. 190, 20 Stat. 113, 160 acres; Pre-Emption Act Sept. 4, 1841, c. 16, § 10, 5 Stat. 455, 160 acres; Desert Land Act March 3, 1877, c. 107, 19 Stat. 377 (Comp. St. 1913, § 4674), 640 acres (reduced to 320 in 1891 by 26 Stat. 1907 [Comp. St. 1913, § 4679]); Timber and Stone Act June 3, 1878, c. 151, 20 Stat. 89, 160 acres; Coal Land Act March 3, 1873, c. 279, 17 Stat. 607 (Comp. St. 1913, § 4659), 160 acres. In addition to these entries, a person could enter, under Act July 9, 1870, c. 235, 16 Stat. 217, 218, placer mining claims and mineral lands without limit to number of acres; the area or size of claims being limited, but there being no limit to the number of claims. The Sundry Civil Service Act of August 30, 1890, 26 Stat. 391, provides, among other things:

"No person who shall, after the passage of this act, enter upon any of the public lands with a view of occupation, entry or settlement, under any of the land laws, shall be permitted to acquire title to more than 320 acres in the aggregate, under all of said laws."

On March 3, 1891, 26 Stat. 1095, c. 561 (Comp. St. 1913, § 5116), an "Act to repeal timber culture laws, and for other purposes," was approved, and in section 17 thereof, at page 1101 (Comp. St. 1913, § 4559), it is declared that such provisions of the Sundry Civil Act—

"shall be construed to include in the maximum amount of lands the title to which is permitted to be acquired by one person only agricultural lands and not to include lands entered or sought to be entered under mineral land laws."

On October 12, 1894, the Secretary of the Interior (W. R. Harrison, 19 Land Dec. Dept. Int. 299) held that an entry valuable only for timber and stone should not be included in the maximum amount of land that could be acquired under the limitation imposed by the act

of August 30, 1890, as construed by the subsequent act of March 3, 1891. On May 4, 1905 (33 Land Dec. Dept. Int. 539), the Secretary of the Interior overruled the decision of 19 Land Dec. Dept. Int. 299, supra, and canceled the entry of the grantor of complainants, in determining a contest initiated against the said land prior to the said time, and held the land subject to entry, and patent was thereafter issued to the defendant; the contention of the plaintiff being that the act of the Secretary of the Interior, being erroneous and void and his conclusions based upon an erroneous conception of the law, is not final, but is subject to review by the courts. In the administration and disposition of public business, the land decisions of the Land Department upon questions of fact are conclusive. It is only questions of law that are reviewable in the courts. Hawley v. Diller, 178 U. S. 476, 20 Sup. Ct. 986, 44 L. Ed. 1157. To the same effect, that erroneous conclusions upon questions of law are reviewable by the court, see Thayer v. Spratt, 189 U. S. 353, 23 Sup. Ct. 576, 47 L. Ed. 845; Le Marcnal v. Tegarden, 175 Fed. 682, 99 C. C. A. 236; Howe v. Parker, 190 Fed. 738, 111 C. C. A. 466; Hoyt v. Weyerhaeuser, 161 Fed. 324, 88 C. C. A. 404.

Upon the issuance of the final receipt by the United States land office, the government acknowledged that it has received full pay for the land, and that it holds the legal title in trust for the entryman, and will in due course issue to him a patent. The entryman is the equitable owner of the land. The land becomes subject to state taxation and under the control of state laws in respect to conveyance, inheritance, etc.; the Land Department retaining such control over the land as would authorize investigation for sufficient reasons predicated upon fraud in the entry, but this power may not be arbitrarily exercised, and, if improperly exercised, the rights of the entryman may be enforced in the courts, after the patent has issued to other parties. The entryman, however, could not institute an action against the government, and may not be able to enforce his equity until patent has been issued by the government to another person. U. S. v. Detroit Lumber Co., 200 U. S. 321, 26 Sup. Ct. 282, 50 L. Ed. 499. An attempt to deprive the entryman of the vested interest in the land which the payment of the money secures to him, by the Land Department, will be corrected whenever the matter is presented so that the judiciary can act upon it. Cornelius v. Kessel, 128 U. S. 456, 9 Sup. Ct. 122, 32 L. Ed. 482.

Complainant bases his right of action upon the contention that it was the intention of Congress to exclude from the operation of the act of August 30, 1890, all lands except lands which are strictly agricultural, and that the word "agriculture" was used by Congress in its restricted sense, and that it applies only to agricultural lands, or lands capable of being cultivated and planted to seed, and that in the use of the term Congress had knowledge that there were classes of public lands which could be acquired by three separate and distinct methods: (1) Those which could be acquired by settlement and occupation under the homestead and desert land laws; (2) those lands which are unfit for cultivation, but valuable either for timber or stone, and can be purchased under the act of June 3, 1878; (3) mineral lands—and that

the use of the words "agricultural lands" necessarily excluded lands valuable for timber and stone and unfit for cultivation.

Reference to the act of August 30, 1890, shows that Congress excluded from entry or settlement *"under any of the land laws* * * * more than 320 acres in the aggregate *under all of said laws."* This includes every classification. In the construction subsequently placed upon this act Congress referred to only two classifications of land: (a) Agricultural lands; and (b) mineral lands. The primary and general rule of statutory construction is that the intent of the lawmaker must be ascertained, when the language employed is involved and the intent not clearly expressed. The purpose for which the act under consideration is enacted being a matter of first importance in arriving at the solution of the question presented, I think it is proper for the court to consider that the conditions of the United States with relation to increase of population were greatly changed in 1890 from the conditions existing at the dates of the enactment of the various public land laws, and that the spirit of the administration of the public land laws was to benefit the many and not the few. It is common knowledge that in 1890 the public land area open to settlement was becoming very limited. It appears that Congress adopted a new policy by limiting the number of acres to be entered by a person *"under any of the land laws"* and *"under all of the laws."*

Upon the application of this act by the Interior Department, limiting the right of acquisition *under all of the land laws* to 320 acres, including mineral lands, Congress immediately passed the act of March 3, 1891. It had been the settled policy of Congress to permit acquisition under the mineral land laws by individuals of an unlimited number of acres, comprised within various claims which are defined, and the prompt passage of the act of March 3, 1891, supra, demonstrates that it had not intended a reversal of this well-settled policy by the act of August 30, 1890, supra. The only lands excluded by the act of March 3, 1891, supra, from the operation of the act of August 30, 1890, supra, are mineral lands. As an expression of the viewpoint from which Congress approached the subject the Honorable Secretary of the Interior (33 Land Dec. Dept. Int. 541, supra) says:

"The bill had been sent to a conference committee of the two houses, and in the written report of the chairman of the House committee, it is stated: 'Section 17 allows mineral entries in addition to the maximum allowance of 320 acres allowed under existing laws.'"

The existing law was the act of August 30, 1890, supra, and the adoption of the language by the conference committee in which the maximum number of acres was limited to 320 acres was recognized by special reference to the act limiting the number of acres under all of the laws, and it seems to me conclusive that the words "agricultural lands" in the act of March 3, 1891, supra, were used only in contradistinction to mineral lands.

The contemporaneous construction of the act by the department cannot aid the complainants, for the reason that the construction now sought to be declared erroneous was promulgated prior to the entry

of the land and the purchase by the complainants, and the last construction placed upon this act by the department should receive some weight by the courts, especially in view of the language employed.

The motion is sustained.